THE STATE EX REL. TOLEDO BLADE COMPANY *v.*
UNIVERSITY OF TOLEDO FOUNDATION ET AL.

[Cite as *State ex rel. Toledo Blade Co. v. Univ.
of Toledo Found.* (1992), 65 Ohio St.3d 258.]

(No. 91–1785—Submitted September 15, 1992—Decided December 16, 1992.)

*Fritz Byers,* for relator.

*Shumaker, Loop & Kendrick, Timothy C. McCarthy* and *Thomas G. Pletz,* for respondents.

*Baker & Hostetler, David L. Marburger* and *Kathryn Young Connors,* urging granting of the writ for *amici curiae,* Cincinnati Enquirer, Inc. et al.

MOYER, C.J. R.C. 149.43(C) provides that a person aggrieved by the failure of a governmental unit to make available a public record may bring a mandamus action in this court pursuant to its original jurisdiction under Section 2, Article IV of the Ohio Constitution. Respondents do not challenge this court's jurisdiction over this matter.

This case presents two related issues: (1) whether the foundation is a "public office" pursuant to R.C. 149.011(A) and thus subject to the open-records requirements of R.C. 149.43; and (2) if so, whether the names of donors to the foundation are public records not excepted from the disclosure requirements of R.C. 149.43. We hold that the foundation is a public office, and the records in question are public.

R.C. 149.43(B) provides, in part, that "[a]ll public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours."

R.C. 149.43(A)(1) defines "public record" as " * * * any record that is kept by any public office, including, but not limited to, state, county, city, village, township, and school district units, except medical records, records pertaining to adoption, probation, and parole proceedings, records pertaining to actions under section 2151.85 of the Revised Code and to appeals of actions arising

under that section, records listed in division (A) of section 3107.42 of the Revised Code, trial preparation records, confidential law enforcement investigatory records, and records the release of which is prohibited by state or federal law."

R.C. 149.011(G) further defines "records" as " * * * any document * * * created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."

R.C. 149.011(A) defines "public office" as " * * * any state agency, public institution, political subdivision, or any other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government."

Thus, if the foundation is a public office, and the names of its donors are public records not falling within any enumerated exception, it must produce them for inspection by the Blade.

An entity need not be operated by the state, or a political subdivision thereof, to be a public office under R.C. 149.011(A). In *State ex rel. Fostoria Daily Review Co. v. Fostoria Hosp. Assn.* (1988), 40 Ohio St.3d 10, 531 N.E.2d 313, this court held that a nonprofit corporation operating a city hospital under a lease with the city was a public office under R.C. 149.011(A). In *Fostoria*, the city of Fostoria had created a public hospital, and had administered it for approximately thirty years. The city then leased the building and equipment to the Fostoria Hospital Association ("association"), a private, nonprofit corporation, which took over the hospital's operations.

The association was required to report to the city regarding all of its operations, income, and expenses, and it paid no rent to the city. In addition, the city agreed to give the association all gifts and bequests made to the hospital. The city made improvements and bought equipment with tax money. This court held that the association was a public office under R.C. 149.011(A).

The *Fostoria* court specifically rejected the argument that R.C. 149.43 did not apply because the association was a private, nonprofit corporation. It held instead that because the association performed a public function and was supported by public tax money, it was a public institution within the meaning of R.C. 149.011(A).

In *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529 N.E.2d 443, paragraph one of the syllabus, this court held similarly that a public hospital that serves city residents and is supported by public taxation is

a public office pursuant to R.C. 149.43. In our opinion, we stated that doubts as to the "public" status of any entity should be resolved in favor of finding it subject to the disclosure statute (citing *Wooster Republican Printing Co. v. Wooster* [1978], 56 Ohio St.2d 126, 10 O.O.3d 312, 383 N.E.2d 124). *Id.* at 110, 529 N.E.2d at 445.

Respondents assert that the foundation is not a public office under R.C. 149.011(A). They argue that because the foundation plays no policy-making role in the university, employs and pays its own staff, pays rent to the university for its office space, and is supported by private donations, there is sufficient insulation between it and the university to exempt it from R.C. 149.43. Respondents cite a West Virginia case, *4–H Road Community Assn. v. West Virginia Univ. Found., Inc.* (1989), 182 W.Va. 434, 388 S.E.2d 308, for the proposition that a private, nonprofit corporation that raises funds for a public university is not subject to a public records statute.

Apart from the fact that the cited case does not bind this court, it is distinguishable. The West Virginia Freedom of Information Act defines a "public body" as several specific offices, plus " * * * any other body which is created by state or local authority or which is primarily funded by the state or local authority." W.Va.Code 29B–1–2(3). In holding the fund-raising entity exempt from the open-records law, the *4–H Road* court noted that the foundation held only funds given directly to it, that gifts given directly to the university were given not to the foundation but were placed into the state treasury, that the employees were paid by the foundation and did not participate in any state benefit or wage plans, and that the offices were not located on the university campus. *Id.*, 388 S.E.2d at 309–310.

In the instant case, the foundation has closer ties with the university. The foundation is the successor to two former gift-receiving entities for the university. In 1960, the University of Toledo Alumni Foundation ("the alumni foundation") was incorporated to receive and solicit gifts for the university. In 1974, the University of Toledo Corporation ("the corporation") was incorporated for the same purpose. In October 1990, these two entities merged to form the foundation, whose articles of incorporation are identical to the amended articles of the corporation. They provide that the foundation's sole purpose is to receive, hold, invest and administer property and to spend funds for the benefit of the university. Throughout the lifetimes of both predecessor entities, they operated out of university office space, for which they paid no rent. The university paid the wages and benefits of their employees. Clearly, then, these entities received support from public taxes. See *Fostoria*, 40 Ohio St.3d at 12, 531 N.E.2d at 316 (rent-free use of a building owned by public body constitutes support by taxation). These facts demonstrate that

the predecessor foundations operated essentially as gift-receiving and soliciting arms of the university, despite their status as private, nonprofit corporations.

Respondents portray the present foundation as separate and distinct from its predecessor entities. After its creation in 1990, the newly formed foundation took steps to distance itself from the university. In 1991, the foundation entered into an agreement with the university to pay rent for its office space, with the term beginning upon completion of certain renovations. The cost of renovations was to be applied toward rent. In March 1991, the foundation agreed to reimburse the university for certain expenses the university incurred in operating the foundation, retroactive to the date of the foundation's creation. Even after these arrangements, however, the university continued to pay Public Employees Retirement System ("PERS") benefits on behalf of foundation employees who had previously been university employees.

The foundation's essential purpose and relationship with the university, moreover, remained unchanged. In the past, those wishing to donate to the university have been instructed to direct those funds either to the alumni foundation or to the corporation. The university has transferred to the alumni foundation and to the corporation proceeds received from direct bequests to the university. It has continued this practice since the creation of the foundation. The foundation holds $17 million in endowed funds in the name of the university, and $23 million in its own name. Of this money, $38 million is pooled to create a single investment portfolio.

Given the relatively recent merger of the corporation and alumni foundation to create the present entity, the continuation of the essential mission of the predecessors, and the continued support of the university, the foundation cannot be viewed in legal isolation from those entities from which it came.

Respondents argue that the foundation is exempt from the public records statute because the purpose of R.C. 149.43 is, like the federal Freedom of Information Act, to inform the public about " 'what their government is up to' " (quoting *Dept. of Justice v. Reporter's Commt. for Freedom of the Press* [1989], 489 U.S. 749, 773, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774, 795). Because disclosing donor names does not inform the public about the conduct or activities of a public office, and because the foundation plays no policy-making role in the university, respondents argue, the foundation's activities should not be subject to R.C. 149.43.

The receipt and solicitation of gifts, however, is an indispensable function of any institution of higher learning. The record shows that the foundation is not a mere supplementary benefactor of the university. It is a major gift-receiving and soliciting entity of the university, and its transaction records do

document its activities. On its face, the definition of "public office" in R.C. Chapter 149 is independent of what policy-making role, if any, the entity plays. A public office is one that performs "any function of government." R.C. 149.011(A). The broad definition of "records" in R.C. 149.011(G) further bolsters this conclusion.

No one would dispute the significant legitimate public purpose served by government in establishing and supporting institutions of higher education. The University of Toledo is a public institution and the solicitation and receipt of donations for the university, and keeping records of that activity, are government functions. There is, moreover, significant public interest in knowing from whom donations come and how that relates to where the university, as a public institution, chooses to spend its money. Nondisclosure by the foundation would obscure the sometimes significant link between a gift and its eventual use.

For the foregoing reasons, we hold that the foundation is a "public office" within the meaning of R.C. 149.011(A). Even without a finding that the foundation is a public office, its records might be subject to R.C. 149.43(B). In *State ex rel. Mazzaro v. Ferguson* (1990), 49 Ohio St.3d 37, 550 N.E.2d 464, this court held that a city auditor who delegated part of an audit of the city to a private firm had to disclose under R.C. 149.43(B) the records created by the private firm. Such records, this court held, must be disclosed by a public office when a private entity performs the duties of a public office, the public office is able to oversee the private entity, and the public office has access to the records produced by the private entity. Although the petitioner in *Mazzaro* requested the records from the public office, this court noted that R.C. 149.43(C) authorizes a mandamus action against either the public office or a private entity holding public records (citing *State ex rel. Mothers Against Drunk Drivers v. Gosser* [1985], 20 Ohio St.3d 30, 33, 20 OBR 279, 282, 485 N.E.2d 706, 710).

Respondents assert that even if the foundation is a public office, it is not required to disclose the names of donors because the names are "records the release of which is prohibited by state or federal law." R.C. 149.43(A)(1). Respondents present several theories under which they claim state and federal law prohibit the release of donor names.[1]

---

1. R.C. 149.43(A)(1) itself provides numerous specific exceptions to the public records reporting requirements. These include " * * * medical records, records pertaining to adoption, probation, and parole proceedings, records pertaining to actions under section 2151.85 of the Revised Code and to appeals of actions arising under that section, records listed in division (A) of section 3107.42 of the Revised Code, trial preparation records, [and] confidential law enforcement investigatory records * * *." These exceptions demonstrate the General Assembly's concern

A party refusing to release records has the burden of showing that the records are exempt from disclosure. *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786, paragraph two of the syllabus.

Trying to meet this burden, respondents first claim that the foundation's donor list is a trade secret, which Ohio's trade secrets law, R.C. 1333.51, prohibits it from disclosing. Respondents argue with some force that its donor lists are analogous to customer lists of private business and satisfy the factors to determine the existence of a trade secret as set forth in *Pyromatics, Inc. v. Petruziello* (1983), 7 Ohio App.3d 131, 134–135, 7 OBR 165, 169, 454 N.E.2d 588, 592. Respondents cite no authority, however, holding that a public office can even *have* its own protected trade secrets under R.C. 1333.51. The case cited by respondents, *State ex rel. Jacobs v. Prudoff* (1986), 30 Ohio App.3d 89, 30 OBR 187, 506 N.E.2d 927, is unavailing. *Jacobs* involved a request to the city of Lorain under R.C. 149.43 for information that originated from a private business, not from the public office itself. Furthermore, this court has held that the fact that disclosure of information will result in a competitive disadvantage to the public institution is not grounds for preventing disclosure under R.C. 149.43.[2] The protection of competitive advantage in private, not public, business underpins trade secret law.

Nor does the Internal Revenue Code prohibit disclosure of the donor names. Respondents cite Section 6104(b), Title 26, U.S.Code, which prohibits the Secretary of Treasury from disclosing the name and address of any contributor to a charitable organization (other than a private foundation), which information the organization must report on its annual return. This provision applies to the secretary only, however, and does not prohibit the organization from disclosing the information on its own. Thus, it is not controlling here.

Respondents also cite Section 6104(e)(1), Title 26, U.S.Code, which exempts donor names and addresses from the requirement that charitable organizations make copies of their returns available to the public. Again, this provision does not prohibit the disclosure of the donor information; it merely grants a privilege that the charitable organization may choose to, or not to, exercise. Neither of these Internal Revenue Code provisions acts as a blanket

for the protection of personal safety, privacy and professional confidences. Names of donors to public institutions are not on the list.

2. *Fox, supra*, 39 Ohio St.3d at 110, 529 N.E.2d at 445–446. A Pennsylvania court has held that Pennsylvania's right-to-know law mandates disclosure of a list of subscribers to a state-produced magazine, irrespective of the commercial purposes of the requestor. *Hoffman v. Commw. Pennsylvania Game Comm.* (1983), 71 Pa.Commw. 99, 455 A.2d 731. The court in *Hoffman* rejected a similar "trade secret" argument.

prohibition on the disclosure of donor names as contemplated in R.C. 149.-43(A)(1).

Finally, respondents assert that federal and state common-law privacy rights prohibit the disclosure of donor names. To support the federal privacy right claim, they cite *Dept. of Justice, supra.* This case involved a request for information in certain individuals' criminal records pursuant to the federal Freedom of Information Act ("FOIA"). FOIA exempts "records or information compiled for law enforcement purposes, but only to the extent that production of * * * [such records] could reasonably be expected to constitute an unwarranted invasion of personal privacy." Section 552(b)(7)(C), Title 5, U.S.Code. The United States Supreme Court explained in *Reporters Committee* that this statutory exemption involves balancing the privacy interests of the individual with the public interest in disclosure. 489 U.S. at 762, 109 S.Ct. at 1476, 103 L.Ed.2d at 788. The FOIA exemption is therefore a product of statute, not of federal common-law privacy rights, and *Reporters Committee* does not stand for a federal common-law privacy right prohibition of the release of names of donors to a public institution under R.C. 149.43(A)(1).

In *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340, paragraph one of the syllabus, this court described Ohio's privacy right as "the right of a person to be let alone * * * and to live without unwarranted interference by the public in matters with which the public is not necessarily concerned." Respondents urge this court to apply this right of privacy to create an exemption for the donor information from R.C. 149.43(B), and gives numerous public policy-based reasons for doing so. In *Fox, supra,* this court was asked to judicially create an exception to R.C. 149.43(B) for publicly owned hospitals. We refused, stating that the court has a duty to enforce a statute as written and not " 'to add to, enlarge, supply, expand, extend or improve the provisions of the statute to meet a situation not provided for' " (quoting *State ex rel. Foster v. Evatt* [1944], 144 Ohio St. 65, 29 O.O. 4, 56 N.E.2d 265, paragraph eight of the syllabus). In the absence of any authority indicating that the General Assembly intended Ohio's common-law privacy right to prohibit the disclosure of the names of donors to a public institution, we refuse to do so.

Furthermore, the General Assembly has enumerated several specific exceptions in R.C. 149.43 itself, and has included a provision exempting those records whose disclosure state and federal law prohibit. Several examples of such prohibiting statutes can be found. See, *e.g.,* R.C. 718.07 (restricting disclosure of municipal income tax records by city); 2505.073(B) (exempting records of abortion appeals from R.C. 149.43); 3701.241 (restricting disclosure

of HIV-related records); and 5703.21 (restricting disclosure of certain records held by Ohio Department of Taxation).

It is the role of the General Assembly to balance the competing concerns of the public's right to know and individual citizens' right to keep private certain information that becomes part of the records of public offices. The General Assembly has done so, as shown by numerous statutory exceptions to R.C. 149.43(B), found in both the statute itself and in other parts of the Revised Code.

In *State ex rel. Multimedia, Inc. v. Whalen* (1990), 48 Ohio St.3d 41, 549 N.E.2d 167, the respondent police chief sought to withhold records pertaining to an ongoing investigation of the shooting of a suspect by a police officer. This court rejected the argument that it should independently weigh the conflicting private and public interests, stating, " * * * in open records cases, the General Assembly has already done the weighing and has not accorded any weight to whether the investigation is ongoing." *Id.* at 42, 549 N.E.2d at 168.[3]

For the foregoing reasons, we hold that a private nonprofit corporation that acts as a major gift-receiving and soliciting arm of a public university and receives support from public taxation is a "public office" pursuant to R.C. 149.011(A), and is subject to the public records disclosure requirements of R.C. 149.43(B). Further, we hold that the names of donors to such a gift-receiving arm of a public university are "public records" pursuant to R.C. 149.43(A)(1), and are not subject to any exception. Accordingly, the writ is granted as to the names of the donors to the foundation.

*Writ granted.*

Sweeney, Douglas, Wright, H. Brown and Resnick, JJ., concur.

Holmes, J., dissents.

Wright, J., concurring. I join in paragraph two of the syllabus and the judgment, albeit reluctantly. It troubles me that a person's private charitable activities can be the subject of public scrutiny. However, this holding is consistent with *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786, and its progeny.

---

3. A Michigan case, *Clerical–Technical Union of Michigan State Univ. v. Bd. of Trustees, Michigan State Univ.* (1991), 190 Mich.App. 300, 475 N.W.2d 373, held that Michigan State University did not have to release to a labor union the names of certain donors to the university. The Michigan Freedom of Information Act, however, contains a specific privacy exemption. Mich.Stat.Ann. 4.1801(13)(1)(a) [M.C.L.A. 15.243(1)(a) ]. The court held in that case the exemption applied. Ohio's Public Records Act, as noted above, has no such exemption.

Nevertheless, there are limits to this public scrutiny. Although the question of what other potentially sensitive information is subject to R.C. 149.43(B) is not before the court at this time, R.C. 149.011(G) provides some guidance for the future. Any record held by a public office that does not "document the organization, functions, policies, decisions, procedures, operations, or other activities of the office" is not a public record. Personal and financial information about individual donors, in my view, does not fall within this definition and is not subject to R.C. 149.43(B).

I believe that the result we reach today stretches to the limit what constitutes a "public record" in the arena of private charitable activities. The court's holding is appropriately narrow and should not be read beyond the facts of this case.

HOLMES, J., dissenting. The University of Toledo Foundation, a private non-profit corporation that is not supported by any public funds, handles or controls no public funds, has no public employees, or public payroll, has no members of the University of Toledo ("university") upon its staff, has no members of the university on its board of trustees, apparently has no direct or interlocking controls by and between itself and the university, and has no purpose in its existence other than receiving, holding, investing and administering property and disbursing funds for the benefit of the university, is not a "public office" pursuant to R.C. 149.011(A).

The purpose of the Ohio "public records" law is to allow for the determination of the activities of public offices and their officers relative to the use and expenditure of public funds. In my view, this law was not enacted in order to "look in" on the private records of a foundation that has in good faith made a determination that it is necessary to privately maintain the names of its donors, either for the purpose of carrying out the expressed desire for confidentiality of the donors, or for the purpose of maintaining the competitive security of such donor lists.

I would hold these lists to be protected from disclosure, and would deny the writ.