[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 155.]

**THE STATE EX REL. STROTHERS, APPELLANT, *v*. WERTHEIM, APPELLEE.**

**[Cite as *State ex rel. Strothers v. Wertheim*, 1997-Ohio-349.]**

*Public records—Cuyahoga County Ombudsman Office is a "public office" as defined by R.C. 149.011(A) and subject to public records disclosure requirements of R.C. 149.43—Records prepared by Ombudsman Office in investigating complaints of child abuse and neglect not excepted from disclosure.*

(No. 97-187—Submitted May 6, 1997—Decided October 22, 1997.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 71185.

————————————

{¶ 1} In June 1996, appellant, Gerald O. Strothers, Jr., contacted the Citizens of Cuyahoga County Ombudsman[1] Office ("Ombudsman Office") to request records pertaining to the Cuyahoga County Juvenile Court, records regarding allegations of child abuse by staff members of the Cuyahoga County Juvenile Detention Center, a listing of all records maintained pertaining to the juvenile detention center, and complaint forms from Cuyahoga County residents regarding the juvenile detention center staff. Appellee, Stephen Wertheim, Executive Ombudsman, declined to produce the requested documents, asserting that the Ombudsman Office was not a "public office" subject to the Public Records Act and that the requested materials were confidential.

{¶ 2} On August 30, 1996, appellant filed in the Court of Appeals for Cuyahoga County a complaint for writ of mandamus to compel appellee to produce the requested documents pursuant to R.C. 149.43. On January 9, 1997, the court

————————————

1. Black's Law Dictionary (6 Ed.1990) 1086, defines "Ombudsman" as "[a]n official or semi official office or person to which people may come with grievances connected with the government."

of appeals granted appellee's motion for summary judgment and denied the appellant's request for a writ of mandamus.

{¶ 3} This cause is now before this court upon an appeal as of right.

_____

*Gerald O. Strothers, Jr., pro se.*

*Porter, Wright, Morris & Arthur, Richard M. Markus* and *Tracey L. Turnbull,* for appellee.

_____

**DOUGLAS, J.**

{¶ 4} Today we are again called upon to decide what constitutes a "public office" and what records are "public records" for purposes of the Public Records Act. The Citizens of Cuyahoga County Ombudsman Office is a private, nonprofit corporation, supported by public funds, established for the purpose of assisting the citizens of Cuyahoga County in resolving complaints against agencies of the county government. The primary issue in this case is whether the Ombudsman Office is a "public office" as defined by R.C. 149.011(A) and thereby subject to the public records disclosure requirements of R.C. 149.43. A secondary issue involves whether any of the documents appellant seeks are excepted from disclosure.

I

{¶ 5} R.C. 149.011(A) defines "[p]ublic office" as "any state agency, public institution, political subdivision, *or any other* organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." (Emphasis added.) R.C. 149.43(A)(1) defines "public record" as "any record that is kept by any public office," subject to specific exceptions enumerated in the statute. Therefore, if the Ombudsman Office is a public office, it must comply, absent any applicable exception, with the disclosure requirements of R.C. 149.43.

{¶ 6} Appellee contends that appellant's request for records must fail because the Ombudsman Office is a private, nonprofit corporation that performs its own unique function and is not a "public office" pursuant to R.C. 149.011(A). In *State ex rel. Fostoria Daily Review Co. v. Fostoria Hosp. Assn.* (1988), 40 Ohio St.3d 10, 531 N.E.2d 313, we specifically rejected the argument that R.C. 149.43 was not applicable where the entity was a private, nonprofit corporation supported by public funds. In *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529 N.E.2d 443, paragraph one of the syllabus, this court held that "[a] public hospital, which renders a public service to residents of a county and which is supported by public taxation, is a 'public institution' and thus a 'public office' pursuant to R.C. 149.011(A), making it subject to the public records disclosure requirements of R.C. 149.43." The entity before us is no different. The Ombudsman Office receives support from public taxation. The Ombudsman Office clearly performs a public service in seeking to curtail public agency abuse by investigating and mediating private citizens' complaints about government.

{¶ 7} Time and time again we have held that R.C. 149.43 must be construed liberally in favor of broad access, and any doubt should be resolved in favor of disclosure of public records. See, *e.g.*, *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 376, 662 N.E.2d 334, 336. In addition, "doubts as to the 'public' status of any entity should be resolved in favor of finding it subject to the disclosure statute." *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.* (1992), 65 Ohio St.3d 258, 261, 602 N.E.2d 1159, 1161.

{¶ 8} The Ombudsman Office is unquestionably a publicly funded agency that acts as an intermediary between the citizens and government of Cuyahoga County. The activities of the Ombudsman Office are inextricably intertwined with the functions performed by Cuyahoga County government agencies. In fact, in documents submitted to this court, the Ombudsman Office refers to its relationship with the Cuyahoga County Commissioners as a "partnership." The Ombudsman

Office monitors Cuyahoga County government to ensure accessibility, quality and effectiveness, and additionally provides oversight for some county services. The Ombudsman Office is required to file with the county commissioners an annual accounting of all public funds it receives. The Ombudsman Office, it appears, risks the loss of public funding if it performs its duties unsatisfactorily. Since funding for the Ombudsman Office comes primarily from the county commissioners, it is obvious that the commissioners maintain some control over the entity. Accordingly, even a cursory review of this court's prior case law interpreting R.C. 149.43 and 149.011(A) leads to the inescapable conclusion that the Ombudsman Office is a "public office" and thus subject to the Public Records Act.

## II

{¶ 9} The appellee contends, and the court of appeals found, in the alternative, that if the Ombudsman Office is a public office, many of the documents appellant seeks would be exempt from disclosure under R.C. 2151.421. We disagree.

{¶ 10} R.C. 2151.421 governs the reporting and investigating of incidents of child abuse and neglect. R.C. 2151.421(H) states that reports made pursuant to this section are confidential. The Cuyahoga County Court of Appeals stated in *State ex rel. Munici v. Kovacic* (June 15, 1994), Cuyahoga App. No. 64818, unreported, 1994 WL 264265, that "[t]he thrust of R.C. 2151.421 is directed to the children services boards or the departments of human services." It is the responsibility of the departments of human services and children services boards to investigate allegations of child abuse and neglect, and the reports that are mandated by R.C. 2151.421 are prepared by those social service agencies. Thus, records prepared by the Ombudsman Office in investigating complaints of child abuse and neglect are not excepted by R.C. 2151.421.

## III

4

{¶ 11} Appellee additionally argues that the records appellant seeks are confidential law enforcement investigatory records excepted from disclosure pursuant to R.C. 149.43(A). R.C. 149.43(A)(2) provides that a confidential law enforcement investigatory record is "* * * any record that *pertains* to a law enforcement matter." (Emphasis added.) The records sought by appellant are not protected from disclosure because they do not pertain to a law enforcement matter. As noted previously, pursuant to R.C. 2151.421, it is the responsibility of the departments of human services and children services boards to investigate allegations of child abuse and neglect. The Ombudsman Office is not a law enforcement agency, and it has no legally mandated enforcement or investigatory authority. In fact, the Ombudsman Office verifies that all complaints concerning child abuse and neglect have been reported to the proper investigatory authority in Cuyahoga County, the Department of Children and Family Services.

{¶ 12} Finally, appellee contends that the records of the Ombudsman Office are not subject to disclosure because they contain medical records which are specifically excepted from disclosure under R.C. 149.43(A). R.C. 149.43(A)(3) defines "medical record" as "any document or combination of documents * * * that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is generated and maintained in the process of medical treatment." In order to fit within the "medical record" exception to the public records law, "a record must pertain to a medical diagnosis *and* be generated and maintained in the process of medical treatment." (Emphasis *sic*.) *State, ex rel. Toledo Blade Co. v. Telb* (C.P.1990), 50 Ohio Misc.2d 1, 10, 552 N.E.2d 243, 251. In *Telb*, the court held that to be excepted from disclosure, the records sought must meet the conjunctive requirements of the statute. In the instant matter, records held by the Ombudsman Office may involve diagnosis and treatment, but they are not "maintained in the process of medical treatment" and therefore are not exempt from disclosure.

Conclusion

{¶ 13} One of the salutary purposes of the Public Records Law is to ensure accountability of government to those being governed. Thus, records, with certain enumerated exceptions, held by government entities belong to the public and must be open for inspection to all citizens. Accordingly, we reverse the judgment of the Cuyahoga County Court of Appeals and order that a writ of mandamus issue directing appellee to make the requested records available for inspection.

*Judgment reversed*
*and writ granted.*

F.E. SWEENEY and PFEIFER, JJ., concur.

RESNICK, J., concurs in judgment only.

MOYER, C.J., dissents.

COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**MOYER, C.J., dissenting.**

{¶ 14} I respectfully dissent because the Cuyahoga County Ombudsman Office is not a "public office" as defined by R.C. 149.011(A).

{¶ 15} The Citizens of Cuyahoga County Ombudsman Office ("Ombudsman Office") is a private, nonprofit corporation that receives financial assistance from Cuyahoga County as well as private contributors. The Ombudsman Office resolves citizens' complaints against Cuyahoga County government agencies by functioning as an intermediary between the public and county government. It offers information regarding certain county services and provides mediation when necessary.

{¶ 16} The Ombudsman Office commences an investigation only after it receives a complaint. When the Ombudsman Office receives a complaint concerning child neglect or abuse that has not been previously reported to an appropriate government agency, it reports the matter to the investigative unit of the

6

Cuyahoga County Department of Children and Family Services and also conducts its own investigation.

{¶ 17} The Ombudsman Office, however, has no legal duty to investigate any complaint; it can refuse to serve anyone or decline to investigate or mediate any complaint as long as it does not violate any antidiscrimination law. In addition, although it provides the county commissioners with its annual report and budget, the Ombudsman Office has no duty to satisfy any government agency that it is performing any task properly. It is not listed in the county government telephone directory.

{¶ 18} Beginning in June 1996, appellant, Gerald O. Strothers, Jr., requested that the Ombudsman Office provide him with access to certain records, including (1) records pertaining to allegations of child abuse by staff members of the Cuyahoga County Juvenile Detention Center, (2) a listing of all records maintained relating to the juvenile detention center, and (3) complaint forms from county residents concerning juvenile detention center staff. The Ombudsman Office refused Strothers's requests.

{¶ 19} We have consistently interpreted the Public Records Act to "ensure that governmental records be open and made available to the public * * * subject to only a few very limited and narrow exceptions." *State ex rel. Williams v. Cleveland* (1992), 64 Ohio St.3d 544, 549, 597 N.E.2d 147, 151. However, our interpretations of the Public Records Act have never been meant to create a *per se* rule of disclosure. With certain specified exceptions, "[p]ublic record" means "any record that is kept by any public office." R.C. 149.43(A)(1). R.C. 149.011(A) defines "public office" as "any state agency, *public institution*, political subdivision, *or any* other organized body, office, agency, institution, or *entity established by the laws of this state for the exercise of any function of government*." (Emphasis added.)

{¶ 20} An entity need not be operated by the state, or a political subdivision thereof, to be a public office under R.C. 149.011(A). *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.* (1992), 65 Ohio St.3d 258, 260, 602 N.E.2d 1159, 1161. An entity which performs a public function and is supported by public tax money is a "public office" within the meaning of R.C. 149.011(A). *Id.*

{¶ 21} We have held that certain entities are public offices under R.C. 149.011(A) and are thereby subject to R.C. 149.43. See, *e.g., Toledo Blade,* at paragraph one of the syllabus ("A private nonprofit corporation that acts as a major gift-receiving and soliciting arm of a public university and receives support from public taxation is a 'public office' pursuant to R.C. 149.011[A], and is subject to the public records disclosure requirements of R.C. 149.43[B]."); *State ex rel. Fostoria Daily Review Co. v. Fostoria Hosp. Assn.* (1988), 40 Ohio St.3d 10, 531 N.E.2d 313 (nonprofit corporation operating a city hospital under a rent-free lease with city is a public office under R.C. 149.011[A]); *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529 N.E.2d 443, paragraph one of the syllabus ("A public hospital, which renders a public service to residents of a county and which is supported by public taxation, is a 'public institution' and thus a 'public office' pursuant to R.C. 149.011[A], making it subject to the public records disclosure requirements of R.C. 149.43.").

{¶ 22} Strothers and the majority rely on the foregoing cases to assert that the court of appeals erred in holding that the Ombudsman Office is not a public office under R.C. 149.011 and denying the writ of mandamus. For the reasons that follow, I conclude that the court of appeals properly held that the Ombudsman Office is not a public office under R.C. 149.011 and therefore is not subject to the disclosure requirements of R.C. 149.43.

{¶ 23} First, as the court of appeals determined, the Ombudsman Office, while providing services which undoubtedly benefit the public, does not exercise any government function. It has no duty, other than complying with

8

antidiscrimination laws, to serve the public or investigate complaints, and the Cuyahoga County government has no authority to compel it to perform these duties. Cf. *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 476, 613 N.E.2d 591, 599 (association is not public employer under R.C. Chapter 4117 because it was not created by the state and it is not subject to state control). In fact, the *government* investigation of previously unreported child neglect and abuse complaints is performed by the Cuyahoga County Department of Children and Family Services upon referral by the Ombudsman Office. Conversely, in *Fostoria Daily Review*, we emphasized that the Fostoria Hospital Association had an express duty under its lease with Fostoria to act as a "public general hospital" in holding that the association was performing a government function. 40 Ohio St.3d at 12, 531 N.E.2d at 315.

{¶ 24} Second, the Ombudsman Office is not controlled by the county government to the extent generally required for entities to be subject to public records provisions. See 1 O'Reilly, Federal Information Disclosure (2 Ed.1990) 4-7, Section 4.02 ("Other entities enjoy statutory creation or governmental status, but not statutory inclusion within the [Freedom of Information Act's] agency status. * * * The court analyzes the substantial supervision and control exercised by federal officials."). The Ombudsman Office need not satisfy any government agency that it is performing any task properly. In contrast, in *Fostoria Daily Review*, the city possessed the right to inspect the hospital and to terminate the lease of the building and equipment to the hospital association if it determined that the association failed to perform as a public general hospital. 40 Ohio St.3d at 12, 531 N.E.2d at 315; see, also, *Fox*, 39 Ohio St.3d at 110, 529 N.E.2d at 445, where the respondents conceded that the hospital was "owned and operated by [the] county."

{¶ 25} Third, the Ombudsman Office is not performing duties historically performed by entities that exercised government functions or were public institutions. Instead, it acts in a unique role as an intermediary between the public

and county government.  The cases cited by Strothers are thus inapposite.  *Toledo Blade*, 65 Ohio St.3d at 262, 602 N.E.2d at 1162 ("Given the relatively recent merger of the corporation and alumni foundation to create the present entity, the continuation of the essential mission of the predecessors, and the continued support of the university, the foundation cannot be viewed in legal isolation from those entities from which it came."); *Fostoria Daily Review* (city operated hospital for over thirty years before leasing it rent-free to nonprofit hospital association); *Fox*, 39 Ohio St.3d at 110, 529 N.E.2d at 445 (hospital owned and operated by county).

{¶ 26} Fourth, although the Ombudsman Office receives funding from Cuyahoga County, the county possesses discretion under R.C. 307.691 to provide this assistance, and the Ombudsman Office also receives money from private sources.  The expenditure of taxpayer funds does not automatically transform recipient entities into public offices subject to R.C. 149.43.  Cf. *Irwin Mem. Blood Bank of the San Francisco Med. Soc. v. Am. Natl. Red Cross* (C.A.9, 1981), 640 F.2d 1051 (receipt of money from government contracts did not make Red Cross an "agency" subject to FOIA absent substantial federal control or supervision of its operations).

{¶ 27} Finally, no public entity delegated its duties to the Ombudsman Office.  See *State ex rel. Gannett Satellite Info. Network v. Shirey* (1997), 78 Ohio St.3d 400, 678 N.E.2d 557; see, also, *State ex rel. Toledo Blade Co. v. Economic Opportunity Planning Assn. of Greater Toledo* (C.P.1990), 61 Ohio Misc.2d 631, 645, 582 N.E.2d 59, 68, relied on by Strothers, where the common pleas court noted that critical aspects of power traditionally associated with the state had been delegated to the entity held to be a public office.

{¶ 28} Contrary to the assertions of the majority, the duties of the Ombudsman Office are not "inextricably intertwined" with the functions performed by the truly public agencies of Cuyahoga County.  Merely because the Ombudsman Office is required to file an accounting of public funds with the county

commissioners does not create the presence of a relationship such that it can be said that the activities of the office are inextricably intertwined with the public agencies of the county. The Ombudsman Office is a private entity funded substantially through private means. Far from holding itself out to the public as a public agency, it performs a function of resolving complaints *against* government agencies. Although the office is, as the majority states, a partially publicly funded agency, that does not compel the inescapable conclusion that the office is a "public office" as defined by the Public Records Act.

{¶ 29} Today the majority effectively creates a new test for defining a public office. The majority determines that the Ombudsman Office is a public office because it works in "partnership" with the county commissioners and because it receives some public funding. By placing emphasis upon these two aspects of the office rather than analyzing the nature of the office in its entirety, this new standard may cast a net far broader than the General Assembly envisioned when it defined "public office" under the Public Records Act. There are countless private entities that work in tandem with agencies of government in public-private partnerships. Likewise, hundreds of private organizations receive some public funding for their operations. The holding here produces the result that the records of any private entity either receiving some public funding or maintaining a working partnership with a government agency are now subject to public disclosure. If the policy of the law is to be changed by subjecting private organizations that are neither controlled nor created by a public agency to the Public Records Act, the General Assembly, not this court, should do it.

{¶ 30} Based upon the foregoing, the court of appeals correctly held that the Ombudsman Office is not a public office under R.C. 149.011(A) and is therefore not subject to the disclosure requirements of R.C. 149.43. The Ombudsman Office is neither a public institution nor an "entity established by the laws of this state for the exercise of any function of government" pursuant to R.C. 149.011(A). It lacks

sufficient ties to any government entity to be appropriately considered a public office. See *Toledo Blade*, 65 Ohio St.3d at 261-262, 602 N.E.2d at 1162. No authority cited by Strothers compels a contrary result, even after construing the summary judgment evidence most strongly in Strothers's favor and resolving any doubts in favor of disclosure. Accordingly, I respectfully dissent.

─────────────────

**COOK, J., dissenting.**

{¶ 31} I respectfully dissent. The definition of "public office" found at R.C. 149.011(A) limits itself to entities "*established by the laws of this state for* the exercise of any function of government." (Emphasis added.) Today's majority reads that part of the requirement out of the statute by classifying as a "public office" any entity that (1) performs a public service and (2) is supported by public funds. That conclusion follows a short progression of cases in which this court has not specifically analyzed whether the entity involved was *"established under the laws of this state for* the exercise of any function of government," instead, analyzing only whether the entity actually exercises a function of government. I believe that we ought to give effect to the entire definitional phrase and apply it to this case to conclude that the Cuyahoga County Ombudsman Office does not meet the statutory definition of a "public office."

{¶ 32} In *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529 N.E.2d 433, the court determined that a hospital owned and operated by Cuyahoga County was a "public institution" and, therefore, a "public office" within the meaning of R.C. 149.011(A). The *Fox* court supported its classification of the hospital as a "public institution" by recognizing that the hospital rendered a public service to county residents and was supported by public taxation. Because county hospitals are established pursuant to statute (R.C. 339.03; 339.06), the remaining issue in that case was whether the hospital was established to exercise "any function of government" as required under R.C. 149.011(A). The court's

opinion did not specifically address the statutory authority under which the county hospital was created, focusing its analysis instead on whether county hospitals, in fact, exercise a function of government. Accordingly, R.C. 149.011(A)'s definitional requirement that a "public office" be "*established by the laws of this state for* the exercise of any function of government" was not fully incorporated into the body or syllabus of the *Fox* opinion.

{¶ 33} In *State ex rel. Fostoria Daily Review Co. v. Fostoria Hosp. Assn.* (1988), 40 Ohio St.3d 10, 531 N.E.2d 313, this court apparently applied the syllabus in *Fox, supra*, as a complete test to determine whether an entity falls under R.C. 149.011(A)'s definition of a "public office," stating that "[s]ince Fostoria City Hospital meets all the criteria stated in paragraph one of the syllabus in *State ex rel. Fox v. Cuyahoga Cty. Hosp. [Sys.], supra,* it is a public institution, and its public records must be disclosed * * *." *Id.* at 13, 531 N.E.2d at 316. The court reached this conclusion without explicitly analyzing whether the hospital was established by statute for the exercise of a function of government, noting only that "the main hospital building was originally leased pursuant to R.C. 749.35, which authorizes the lease of a city-owned hospital building to a nonprofit corporation for use as a general hospital. See, also, R.C. 140.05. According to R.C. 749.35, if the nonprofit corporation fails to operate the hospital as a public general hospital, the lease may be terminated and the control and management of the hospital, including equipment, revert to the city." *Id.* at 12, 531 N.E.2d at 315.

{¶ 34} While it is possible that the *Fostoria* court intended its discussion of the statutory relationship between the city of Fostoria as owner of the hospital building and the Fostoria Hospital Association as its tenant to fulfill R.C. 149.011(A)'s definitional requirement that a "public office" be established by the laws of this state for the exercise of a function of government, that intent is not entirely clear from its opinion.

**{¶ 35}** In *State ex rel. Toledo Blade Co. v. Univ. of Toledo Found.* (1992), 65 Ohio St.3d 258, 602 N.E.2d 1159, this court again did not discuss that portion of the definition of "public office" requiring that an entity be *"established by the laws of this state for* the exercise of a public function." Instead, the court considered university support and the public function served by the private, nonprofit corporation therein under consideration, emphasizing that the corporation could not be separated from the public institution that it served (the University of Toledo). Because the court found the corporation was, in effect, an "entity of the university," it reasoned that it too was subject to R.C. 149.43's reporting requirements.

**{¶ 36}** Although the laws of this state authorize a county or municipal authority to cooperate and give financial assistance to a nonprofit ombudsman corporation (R.C. 307.691), that corporation itself is not established by statute to exercise a function of government. Instead, as a private, nonprofit corporation, the Cuyahoga County Ombudsman Office is formed by its incorporators under the laws of this state and those incorporators determine the corporation's purpose. R.C. 1702.03. Accordingly, I believe that the Cuyahoga County Ombudsman Office is not a "public office" within the meaning of R.C. 149.011(A). Moreover, even assuming that *Fostoria* and *Toledo Blade* impliedly establish a relaxed interpretation of R.C. 149.011(A)'s requirement that a public office be "*established by the laws of this state for* the exercise of any function of government," Chief Justice Moyer's dissent nonetheless demonstrates that the Cuyahoga County Ombudsman Office does not meet even that relaxed interpretation.

**{¶ 37}** I am mindful that this court has repeatedly emphasized that R.C. 149.43 must be "construed liberally in favor of broad access, and that any doubt is resolved in favor of disclosure of public records." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 376, 662 N.E.2d 334, 336, citing *State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 246, 643 N.E.2d 126, 128. Liberal construction, however, does not empower this court to ignore the

phrasing of statutory definitions.  I would, therefore, affirm the judgment of the appellate court, based on the fact that the Cuyahoga County Ombudsman Office is not established by the laws of this state for the exercise of a function of government.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

_____