[Cite as *State ex rel. Watkins v. St. Clare Retirement Community*, 2016-Ohio-3136.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel.<br>Gwendolyn Watkins, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 15AP-175 |
| | : | |
| St. Clare Retirement Community<br>and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on May 24, 2016

**On brief:** *Lisa M. Clark,* for relator.

**On brief:** *Dinsmore & Shohl, LLP,* and *Jacob Dobres,* for respondent St. Clare Retirement Community.

**On brief:** *Michael DeWine*, Attorney General, and *Cheryl J. Nester,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Gwendolyn Watkins, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied her application for permanent total disability ("PTD") compensation and to find that she is entitled to said compensation. Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a

magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that the commission abused its discretion when it relied on the psychological report of Dr. Manges because Dr. Manges indicated that relator was capable of work with certain limitations but then failed to identify those limitations in his report. Because Dr. Manges did not identify the applicable limitations, his report did not constitute some evidence upon which the commission could rely. Therefore, the magistrate has recommended that we grant a writ of mandamus and order the commission to vacate its order that denied relator's application for PTD and, after either receiving an addendum report from Dr. Manges or having relator examined by another examiner, determine whether or not she is entitled to said compensation.

{¶ 2} Relator's employer, respondent St. Clare Retirement Community ("St. Clare"), filed objections to the magistrate's decision. In its first objection, St. Clare contends that the magistrate ignored Dr. Manges' conclusion that relator's allowed psychological condition "moderately negatively affected" relator's ability to perform sustained remunerative employment. In essence, St. Clare argues that the magistrate improperly substituted her judgment for that of the commission with respect to the evidentiary impact of Dr. Manges' report. We disagree.

{¶ 3} The magistrate did not substitute her judgment for that of the commission in weighing the impact of Dr. Manges' report. Rather, the magistrate found that Dr. Manges' report was not some evidence upon which the commission could rely because the report expressly referenced limitations but did not identify the limitations under which relator would be capable of working. Therefore, we overrule St. Clare's first objection.

{¶ 4} In its second objection, St. Clare contends the magistrate improperly shifted the burden of proof to require the commission to consider why relator made no efforts at vocational rehabilitation since leaving the workplace in 1995. St. Clare argues that by requiring the commission on remand to consider whether relator's psychological condition impacted her ability to participate in vocational rehabilitation, the magistrate impermissibly shifted the burden of proof. Again, we disagree.

{¶ 5} The magistrate's decision does not shift the burden of proof. The magistrate's decision simply highlights an issue that may need to be addressed if the commission reexamines the nonmedical factors following a redetermination of whether

relator's psychological claim prevents her from sustained remunerative employment. Therefore, we overrule St. Clare's second objection.

{¶ 6}    Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law.  Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.   In accordance with the magistrate's decision, we grant relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus granted.*

TYACK and BROWN, JJ., concur.

_____

## APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Gwendolyn Watkins, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 15AP-175 |
| | : | |
| St. Clare Retirement Community and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on February 17, 2016

*Lisa M. Clark,* for relator.

*Dinsmore & Shohl, LLP,* and *Jacob Dobres,* for respondent St. Clare Retirement Community.

*Michael DeWine*, Attorney General, and *Sana Ahmed,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 7}  Relator, Gwendolyn Watkins, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied her application for permanent total disability ("PTD") compensation, and ordering the commission to find that she is entitled to that compensation.

Findings of Fact:

{¶ 8} 1. Relator sustained a work-related injury on June 13, 1993, and her workers' compensation claim has been allowed for the following conditions:

> CERVICAL STRAIN; HERNIATED NUCLEUS PULPOSUS C4-C5; AGGRAVATION OF PRE-EXISTING SPONDYLITIC C5-6 AND C6-7; RIGHT CARPAL TUNNEL SYNDROME; LEFT CARPAL TUNNEL SYNDROME; DEPRESSIVE MOOD DISORDER; CERVICAL STENOSIS AT C4-5 AND C5-6.

{¶ 9} 2. On February 28, 2014, relator filed her application for PTD compensation. According to her application, relator was 40 years of age, had completed the 12th grade, and had participated in 12 weeks of nurse aide training. Relator indicated that she had filed for Social Security Disability benefits, but did not indicate whether or not she was receiving those benefits. Relator indicated that she could read, write, and perform basic math, that she used a cane and a C-Pap machine, and that she was not interested in participating in rehabilitation services. Relator also indicated that she last worked as a nursing assistant in 1998.

{¶ 10} 3. In support of her application, relator submitted the February 13, 2014 report of William C. Melchior, Ed.D., her treating psychologist. Dr. Melchior opined that relator's allowed psychological condition had reached maximum medical improvement ("MMI") and that psychological testing revealed that her depression was at the high end of the average range for chronic pain patients. He noted that she would have a number of restrictions or limitations including impaired cognitive skills, low stress, frustration tolerance, difficulty remembering and following instructions, difficulty maintaining attention for extended periods of time, difficulty accepting criticism from a supervisor, and difficulty maintaining a normal work day or normal work week without an unreasonable number and length of rest periods. He opined that she was permanently and totally disabled as a result of the allowed psychological condition.

{¶ 11} 4. Relator's employer had her examined by Jessica Twehues, Psy.D. In her July 17, 2014 report, Dr. Twehues identified the allowed conditions in relator's claim, listed and discussed the medical records which she reviewed, opined that she had a 25 percent impairment, and further opined that she would be unable to engage in any type of sustained remunerative employment, stating:

It is my opinion that the [Injured Worker] would be unable to engage in any type of sustained remunerative employment based on her allowed psychological condition of Depressive Disorder NOS. She presents as significantly depressed and demonstrated poor stress tolerance during testing. She cried on a few occasions during the evaluation and demonstrated variable eye contact, sitting on the couch slumped and looking at the ceiling. Dr. Melchior, her treating psychologist, opines that the [Injured Worker] would have difficulty returning to work due to her depressive state. She has a long history of depressive symptoms which Dr. Melchior opines have worsened in recent years. I opine that the [Injured Worker] would be unable to return to work for these above stated reasons.

{¶ 12} 5. Relator was also examined by Kenneth J. Manges, Ph.D. In his September 9, 2014 report, Dr. Manges identified the allowed conditions in relator's claim as well as the medical records which he reviewed. Dr. Manges opined that relator's allowed psychological condition had reached MMI and discussed her impairments as follows:

The [Injured Worker] demonstrates a Class 3 moderate whole person psychological impairment of 35% as a direct and proximate result of her BWC injury # 93-45400.

Activities of Daily Living: 35% impairment levels are compatible with some but not all useful functioning for example, she avoids taking, on any new challenges or responsibilities and is pre-occupied with her pain and losses.

Social Functioning: 35% impairment level are compatible with some but not all useful functioning. For example, she minimally socializes with anyone outside of her immediate family.

Concentration: 15% impairment levels are compatible with some but not all useful functioning. For example, she was capable of performing a short term auditory memory task and relies on [sic] does her own decision making.

Adaptation: 35% impairment levels are compatible with some but not all useful functioning. For example, she is preoccupied with her losses and stays away from most new experiences.

* * *

> Overall, Ms. Watkins's activities of daily living, social functioning, concentration and adaptation are moderately negatively affected by her allowed psychological condition from the industrial injury.

{¶ 13} On the occupational activity assessment form, Dr. Manges indicated that relator was capable of performing work within the limitations/modifications noted in his attached report.

{¶ 14} 6. There are two medical reports in the stipulation of evidence addressing relator's impairment due to the allowed physical conditions in her claim. In his July 11, 2014 report, Paul T. Hogya, M.D., opined that relator could perform low-level, light-duty work, stating:

> [B]ased on the allowed physical conditions in the 1993 industrial injury claim, the objective medical evidence and examination findings support Ms. Watkins to be readily capable of functioning in a low-level, light industrial demand capacity. That means exerting up to 15 pounds occasionally; and or up to 10 pounds of force frequently; and/or a negligible amount of force constantly in the course of lifting, carrying, pushing and pulling various objects Overhead reaching may be occasional and under five pounds. She should avoid overhead climbing and crawling. Based on the allowed conditions alone, she may squat and kneel as needed. She may occasionally climb stairs and ramps such as entering and exiting buildings. She is capable of using step stools and small ladders up to four feet. Based on the allowed conditions alone, sitting may be up to two hours at a time and standing and walking up to one hour at a time with the opportunity to change positions. She is capable of driving automobiles and small pickup trucks with automatic transmission up to 45 minutes at a time with an opportunity to exit the vehicle and stretch. She has no restrictions with regard to hearing, seeing or speaking. She is capable of operating a telephone, headset, keyboard and mouse. She is capable of using the hands as needed for gripping, grasping, pinching, squeezing, writing, fine manipulation and light assembly within the weight limits outlined above. She should avoid use of vibrating tools and hammers Any keyboard and mouse work should be accommodated with an ergonomic set up.

{¶ 15} Relator was also examined by Gary L. Ray, M.D. In his August 27, 2014 report, Dr. Ray opined that relator's allowed physical conditions had reached MMI, assessed a 28 percent whole person impairment, and concluded that she was capable of performing sedentary work.

{¶ 16} 7. The stipulation of evidence contains two vocational reports. In a report dated October 20, 2014, Janet Chapman concluded that relator presented with a very limited vocational profile. Considering her physical and mental limitations, Ms. Chapman opined that relator would be unable to return to work in the competitive labor market.

{¶ 17} In his November 2, 2014 report, Mark A. Pinti opined that relator was capable of performing some sustained remunerative employment and should avoid work that is stressful in nature or that involves making judgments or working in tandem with others. Mr. Pinti provided a partial list of unskilled, sedentary jobs, which he believed relator could perform.

{¶ 18} 8. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on November 12, 2014. The SHO relied on the medical report of Dr. Ray to conclude that relator was capable of performing sedentary employment. Thereafter, the SHO relied on the report of Dr. Manges to conclude that relator's psychological condition did not preclude her from performing some sustained remunerative employment, stating:

> Kenneth Manges, Ph.D., examined the Injured Worker on 08/20/2014 at the request of the Industrial Commission. Dr. Manges examined the Injured Worker on the allowed psychological condition and concludes that the allowed psychological [condition] has reached maximum medical improvement.
>
> Dr. Manges further opines that the Injured Worker retains the functional capacity to perform sustained remunerative employment when the impairments arising from the allowed psychological condition are considered. Dr. Manges does find that the Injured Worker suffers moderate limitations in activities of daily living, social functioning and adaptation as well as a mild impairment in concentration.

{¶ 19} Thereafter, the SHO considered relator's non-disability factors. First, the SHO found that her age of 60 years did constitute a barrier to her ability to become re-

employed. The SHO determined that relator's high school education and her satisfactory completion of vocational training to become a nurse aide in conjunction with her ability to read, write, and perform basic math, qualified her to perform semi-skilled to skilled employment. As such, the SHO considered relator's education to be a positive vocational factor. The SHO noted that relator had worked for 25 years as a nurse aide where she learned to perform her job duties through on-the-job training and was ultimately able to supervise 8 to 12 people. The SHO concluded that relator's job history provided her with numerous transferrable skills and, as such, found her work history to be a positive vocational factor.

{¶ 20} The SHO noted that relator had not participated in vocational rehabilitation services nor had she made any other attempts to improve her skills since she last worked in 1995 when she was 40 years of age. Specifically, the SHO stated:

> Additionally, the Staff Hearing Officer finds that the Injured Worker has not participated in vocational rehabilitation or made any other attempts to improve her skills in order to enhance her ability to gain re-employment since she last worked in 1995 when she was only 40 years of age.
>
> State ex rel. Cunningham v. Industrial Commission (2001) 91 Ohio St.3d 250 sets forth the proposition that the Commission may consider all possible skills which may reasonably be developed to enhance the Injured Worker's ability to return to the work force. In the case at hand, the Staff Hearing Officer finds this particularly significant because the Injured Worker has not worked in any capacity since she was only 40 years of age.
>
> Further, State ex rel. Wilson v. Industrial Commission (1997) 80 Ohio St.3d 261 sets forth the proposition that permanent total disability compensation is an award of last resort which should only be awarded when all avenues of returning to sustained remunerative employment having been exhausted. In the case at hand, the Staff Hearing Officer finds that the Injured Worker has not exhausted all avenues of returning to sustained remunerative employment because she never participated in vocational rehabilitation or made any other attempts to enhance her skills. Additionally, the Injured Worker testified at hearing that she has made no attempt to return to the work force since she last worked in 1995.

> Based upon these factors, the Staff Hearing Officer finds that the Injured Worker has failed to establish that her non-medical disability factors render her permanently incapable of engaging in sustained remunerative employment.

{¶ 21} The SHO concluded by stating that relator's non-medical disability factors, in conjunction with her impairments, that she retained the functional capacity to perform sustained remunerative employment and was not permanently and totally disabled.

{¶ 22} 9. Relator's request for reconsideration was denied by order of the commission mailed January 8, 2015.

{¶ 23} 10. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 24} For the reasons that follow, it is this magistrate's decision that this court should issue a writ of mandamus.

{¶ 25} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 26} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 27} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic*

*v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 28} In this mandamus action, relator challenges the commission's reliance on the report of Dr. Manges. Specifically, relator argues that Dr. Manges neglected to list the limitations/modifications under which she would be able to perform some sustained remunerative employment.

{¶ 29} As noted in the findings of fact, Dr. Manges found that relator was moderately, negatively affected by her allowed psychological condition, stating:

> Activities of Daily Living: 35% impairment levels are compatible with some but not all useful functioning for example, she avoids taking, on any new challenges or responsibilities and is pre-occupied with her pain and losses.
>
> Social Functioning: 35% impairment level are compatible with some but not all useful functioning. For example, she minimally socializes with anyone outside of her immediate family.
>
> Concentration: 15% impairment levels are compatible with some but not all useful functioning. For example, she was capable of performing a short term auditory memory task and relies on [sic] does her own decision making.
>
> Adaptation: 35% impairment levels are compatible with some but not all useful functioning. For example, she is preoccupied with her losses and stays away from most new experiences.

{¶ 30} Thereafter, on his occupational activity assessment form, Dr. Manges checked the box indicating that relator was capable of work within the limitations/modifications noted below, where he handwrote "[p]lease see attached report." Relator asserts that Dr. Manges failed to identify any limitations or restrictions in

the body of his report. In response, both the commission and relator's employer argue that Dr. Manges' report does constitute some evidence upon which the commission could rely and that his report does specify limitations. Specifically:

> [S]he avoids taking, on any new challenges or responsibilities and is pre-occupied with her pain and losses.
>
> * * * [S]he minimally socializes with anyone outside of her immediate family.
>
> * * * [S]he was capable of performing a short term auditory memory task and relies on [sic] does her own decision making.
>
> [S]he is preoccupied with her losses and stays' way from most new experiences.

{¶ 31} The magistrate agrees with relator that Dr. Manges did not identify the limitations under which relator would be capable of working. For example, Dr. Manges could have noted that relator should avoid undue stress, working with others, and complex tasks; however, he did not. To the extent respondents assert that the above-noted statements constitute limitations on her ability to work, the magistrate disagrees. Without having provided any limitations, the magistrate finds that Dr. Manges' report does not constitute some evidence upon which the commission could rely.

{¶ 32} The magistrate is cognizant that the commission specifically noted that relator had not pursued any vocational rehabilitation since she left work in 1995. Relator noted that, at some point, she was found not to be a feasible candidate for rehabilitation; however, there is no indication of the reason or timing of this finding. While it could be said that the commission provided an alternative basis upon which it denied her PTD compensation, it must be remembered that one can only participate in vocational rehabilitation if they have the ability to do so. Because the commission relied on the psychological report of Dr. Manges, which the magistrate finds does not constitute some evidence, the SHO did not consider whether or not, from a psychological standpoint, relator could have participated in vocational rehabilitation. As such, to the extent that this might be considered an alternative basis upon which PTD compensation was denied, it is not supported by the evidence.

{¶ 33} Based on the foregoing, it is this magistrate's decision that this court should issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its order which denied relator's application for permanent total disability compensation and, after either receiving an addendum report from Dr. Manges or having relator examined by another examiner, determine whether or not she is entitled to that compensation.


/S/ MAGISTRATE
STEPHANIE BISCA


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).