THE STATE EX REL. GANNETT SATELLITE INFORMATION NETWORK, INC., D.B.A. THE CINCINNATI ENQUIRER, *v.* PETRO, STATE AUDITOR, ET AL.

THE STATE EX REL. THE WARREN NEWSPAPERS, INC. *v.* COURT OF JURISDICTION OF THE MAHONING VALLEY SANITARY DISTRICT ET AL.

[Cite as *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro* (1997), 80 Ohio St.3d 261.]

(Nos. 97–1876 and 97–1893—Submitted October 1, 1997—Decided October 3, 1997.)

*Graydon, Head & Ritchey, John C. Greiner* and *John A. Flanagan,* for relator Gannett Satellite Information Network, Inc.

*Arter & Hadden, Gregory V. Mersol, John B. Lewis* and *John P. Gartland,* for relator The Warren Newspapers, Inc.

*Betty D. Montgomery,* Attorney General, and *Arthur J. Marziale, Jr.,* Assistant Attorney General, for respondent.

---

**Per Curiam.**

### Motions

We initially grant Petro's motion to consolidate these cases. Relators do not oppose Petro's motion, and the cases raise similar legal issues. See, *e.g., State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 376, 662 N.E.2d 334, 336.

We also grant relators' requests to dismiss the MVSD Court as a party. The uncontroverted evidence establishes that the MVSD Court is no longer preventing Petro from publicly disclosing the requested records. See, also, S.Ct.Prac.R. X(2); Civ.R. 15(A) and 41(A).

In addition, we grant relators' requests to amend their complaints to include claims for attorney fees against Petro. S.Ct.Prac.R. X(2); Civ.R. 15(A). While relators did not initially request these fees based on Petro's representations that he was only following the MVSD Court's orders, Petro subsequently denied access to many of the working papers used in connection with his audit. *State ex rel. Jones v. Montgomery Cty. Court of Common Pleas* (1996), 75 Ohio St.3d 642, 643, 665 N.E.2d 673, 674 (In mandamus actions, courts are not limited to considering facts and circumstances at the time a proceeding is commenced, but should consider facts and conditions at the time it determines whether to issue the writ.). Petro does not oppose a consideration of these attorney fees claims.

### R.C. 149.43; Audit Reports

Relators assert that they are entitled to a writ of mandamus to compel Petro to provide access to the requested records. "[T]he purpose of Ohio's Public Records Act, R.C. 149.43, is to expose government activity to public scrutiny, which is absolutely essential to the proper working of a democracy." *State ex rel. WHIO-TV-7 v. Lowe* (1997), 77 Ohio St.3d 350, 355, 673 N.E.2d 1360, 1364; *White v. Clinton Cty. Bd. of Commrs.* (1996), 76 Ohio St.3d 416, 420, 667 N.E.2d 1223, 1226–1227. Mandamus is the appropriate remedy to compel compliance with R.C. 149.43. *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 426–427, 639 N.E.2d 83, 89. R.C. 149.43 must be construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records. *State ex rel. Gannett Satellite Info. Network, Inc. v. Shirey* (1997), 78 Ohio St.3d 400, 401, 678 N.E.2d 557, 559.

In general, audits, audit drafts, and working papers and notes relating to audits of public offices are public records that are subject to disclosure under R.C. 149.43, even where the audit was performed by a private entity on behalf of a public office. *State ex rel. Mazzaro v. Ferguson* (1990), 49 Ohio St.3d 37, 550 N.E.2d 464; see, also, R.C. 117.26. Even if, as initially contended by the MVSD Court, Petro's investigation and report were not a statutory audit, Petro, a public officer, relied on the records to perform his investigation of the MVSD, a public office, and the working papers thus would normally constitute public records. *Id.,* 49 Ohio St.3d at 40, 550 N.E.2d at 467 ("[B]y construing R.C. 149.011[G] to include any material on which a public office could or did rely, our decision preserves the public's right of access to public records * * *."); *State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 246–247, 643 N.E.2d 126, 128 ("R.C. 149.011[G] broadly defines 'records' to include 'any * * * device, or

item * * * received by * * * any public office of the state * * * which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.' ").

With the foregoing standards in mind, we consider relators' contentions.

## Waiver

Relators initially contend that Petro and the special prosecutor waived any rights Petro had to rely on exemptions. Exemptions are usually fully applicable absent evidence that the public office having custody of the records disclosed the records to the public. *State ex rel. WLWT–TV5 v. Leis* (1997), 77 Ohio St.3d 357, 361, 673 N.E.2d 1365, 1369–1370; *State ex rel. Zuern v. Leis* (1990), 56 Ohio St.3d 20, 22, 564 N.E.2d 81, 84. For the following reasons, Petro and the special prosecutor waived Petro's right to deny access to records based on claimed exemptions.

First, the special prosecutor released copies of the records to Petro for use in his special audit. The prosecutor should have been aware that records which Petro considered in his audit of a public entity would be subject to disclosure under R.C. 149.43. *Mazzaro* and *Thomas, supra.* Second, Petro made these records available to the public prior to the MVSD Court's orders barring access. *Zuern,* 56 Ohio St.3d at 22, 564 N.E.2d at 84 ("Voluntary disclosure can preclude later claims that records are exempt from release as public records."). Third, Petro represented to relators that the records were public records and that they would be provided access to all working papers involved in his audit when his prohibition case was settled. Fourth, Petro disclosed a grand jury subpoena requesting the records. Fifth, Petro publicly released his special audit report and a detailed index of the records, which described the records withheld. Sixth, Petro orally described these records to a representative of Warren Newspapers. Finally, although Petro contacted the special prosecutor, the special prosecutor has not asserted that the records requested by relators are exempt.

Based on all of the foregoing circumstances, Petro waived his right to assert exemptions to disclosure of the requested records. Unlike *State ex rel. Master v. Cleveland* (1996), 76 Ohio St.3d 340, 343, 667 N.E.2d 974, 976–977, this is not simply a case in which prior publicity is asserted to support the media's waiver contention.

Further, for the reasons that follow, even assuming that Petro did not waive the claimed exemptions, they are inapplicable here.

## Crim.R. 6(E); Grand Jury Materials

Petro contends that the records are exempt because they are grand jury materials under Crim.R. 6(E). Public records do not include "[r]ecords the

release of which is prohibited by state or federal law." R.C. 149.43(A)(1)(*o*). Crim.R. 6(E) exempts certain grand jury materials from disclosure under R.C. 149.43. *WLWT–TV5*, 77 Ohio St.3d at 361, 673 N.E.2d at 1369; *State ex rel. Beacon Journal Publishing Co. v. Waters* (1993), 67 Ohio St.3d 321, 617 N.E.2d 1110. More specifically, Crim.R. 6(E) provides:

"Deliberations of the grand jury and the vote of any grand juror shall not be disclosed. Disclosure of other matters occurring before the grand jury may be made to the prosecuting attorney for use in the performance of his duties. A grand juror, prosecuting attorney, interpreter, stenographer, operator of a recording device, or typist who transcribes recorded testimony, may disclose matters occurring before the grand jury, other than the deliberations of a grand jury or the vote of a grand juror, but may disclose such matters only when so directed by the court preliminary to or in connection with a judicial proceeding, or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. * * * *No obligation of secrecy may be imposed upon any person except in accordance with this rule.*" (Emphasis added.)

The records here do not include either grand jury deliberations or the vote of a grand juror. In addition, the State Auditor is not one of the persons listed in Crim.R. 6(E) regarding the disclosure of other "matters occurring before the grand jury," like records submitted in response to a grand jury subpoena. Therefore, Crim.R. 6(E) does not exempt disclosure by Petro of the requested records, which he obtained from the special prosecutor, who had in turn received them in response to grand jury subpoenas. See, generally, 1 Wright, Federal Practice and Procedure (1982) 246, Section 106 (No obligation of secrecy can be imposed on any person except those specified in Fed.R.Crim.P. 6[E], which is analogous to Crim.R. 6[E].). Petro's reliance on *WLWT–TV5* and *Waters* is misplaced because in both of those cases, the prosecutor, as opposed to a person not specified in Crim.R. 6(E), refused access to the grand jury records.

### R.C. 149.43(A)(2)(c); Work Product

Petro also contends that the records are exempt work product under R.C. 149.43(A)(2)(c), which includes within the definition of exempt "confidential law enforcement investigatory record" records the release of which "would create a high probability of disclosure of * * * specific investigatory work product."

The work product exemption does not apply. First, Petro did not introduce evidence that established the applicability of the work product exemption. Exemptions from disclosure must be strictly construed against the public records custodian, and the custodian has the burden to establish an exemption. *State ex rel. McGowan v. Cuyahoga Metro. Hous. Auth.* (1997), 78 Ohio St.3d 518, 519, 678 N.E.2d 1388, 1389. Information assembled by law enforcement officials in

connection with a pending or highly probable criminal proceeding constitutes exempt work product under R.C. 149.43(A)(2)(c). See, *e.g., State ex rel. Leonard v. White* (1996), 75 Ohio St.3d 516, 517, 664 N.E.2d 527, 529. In refusing Gannett's request for access to the records, Petro admitted that his office did "not have any detailed knowledge of the future plans of the Task Force and/or the special prosecutor," *i.e.*, no knowledge that the records obtained by grand jury subpoena were in connection with a pending or highly probable criminal proceeding.

Second, given Petro's disclosure of other records, such as the index and audit report, and oral statements describing the withheld records, it is doubtful that disclosure of these working papers would *create* a high probability of disclosure of investigatory work product, as required for R.C. 149.43(A)(2)(c). Cf. *State ex rel. Plain Dealer Publishing Co. v. Lesak* (1984), 9 Ohio St.3d 1, 4, 9 OBR 52, 54, 457 N.E.2d 821, 824 (Celebrezze, C.J., concurring).

Finally, the requested records consist largely of nonexempt public records, *e.g.*, newspaper articles, MVSD contracts and records, and records of campaign contributions. Records which are unquestionably nonexempt do not become exempt simply because they are placed in a prosecutor's file or, as in this case, are the subject of grand jury subpoenas. *WLWT–TV5*, 77 Ohio St.3d at 361, 673 N.E.2d at 1370; *Cincinnati Enquirer*, 75 Ohio St.3d at 378, 662 N.E.2d at 338.

Therefore, relators are entitled to writs of mandamus to compel Petro to provide access to the requested records. Petro waived any exemptions and, even assuming no waiver, the exemptions are inapplicable.

## Attorney Fees

Relators also claim attorney fees. Relators have established a sufficient public benefit by satisfaction of the public's right to know. *State ex rel. Olander v. French* (1997), 79 Ohio St.3d 176, 180, 680 N.E.2d 962, 965. The records involve alleged improprieties concerning a public office, which were initially disclosed to the public as a result of articles based on prior public records requests. In addition, Petro did not have a reasonable basis to preclude access to the requested records. *Id.*, 79 Ohio St.3d at 179, 680 N.E.2d at 964–965. In fact, he had previously represented to relators that the records were public and that he would disclose them but for the MVSD Court's orders. Therefore, relators are entitled to an award of attorney fees against Petro.

## Conclusion

Accordingly, we grant relators writs of mandamus compelling respondent Petro to provide access to requested records, grant relators attorney fees against Petro,

and order relators to submit bills and documentation in support of their requests for attorney fees in accordance with the guidelines set forth in DR 2–106.

*Writs granted and*
*attorney fees granted.*

MOYER, C.J., PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

RESNICK and F.E. SWEENEY, JJ., concur separately.

DOUGLAS, J., not participating.

————

ALICE ROBIE RESNICK, J., **concurring separately.** I join with the majority in finding that relators are entitled to writs of mandamus compelling Petro to provide access to the requested records. I also join with the majority in finding that relators are entitled to awards of attorney fees. However, I do not agree with all of the reasoning employed by the majority.

I would simply find that the records must be disclosed because Petro and the special prosecutor waived the right to assert any exemptions that were raised or that could have been raised. I view the remainder of the majority's discussion regarding the inapplicability of possible exemptions "assuming that Petro did not waive the claimed exemptions" as mere surplusage that is not essential to the resolution of this case.

Furthermore, I disagree with the majority's application of a "public benefit" test to support the award of attorney fees against Petro. Relators are prevailing parties under R.C. 149.43(C) and should be entitled to mandatory awards of attorney fees. See *State ex rel. Olander v. French* (1997), 79 Ohio St.3d 176, 180–181, 680 N.E.2d 962, 965–966 (Douglas, J., dissenting, joined by Resnick and Francis E. Sweeney, JJ.); *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 175–178, 661 N.E.2d 1049, 1052–1054 (Francis E. Sweeney, J., concurring in part and dissenting in part, joined by Douglas and Resnick, JJ.).

F.E. SWEENEY, J., concurs in the foregoing concurring opinion.