Kennedy, J., dissenting.
*80 {¶ 62} " ' "[P]ublic records are the people's records, and * * * the officials in whose custody they happen to be are merely trustees for the people." ' "
*412 Dayton Newspapers, Inc. v. Dayton , 45 Ohio St.2d 107, 109, 341 N.E.2d 576 (1976), quoting State ex rel. Patterson v. Ayers , 171 Ohio St. 369, 371, 171 N.E.2d 508 (1960), quoting 35 Ohio Jurisprudence, Inspection of Records: Generally, Section 41, at 45 (1934). "[I]n a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations." Cox Broadcasting Corp. v. Cohn , 420 U.S. 469, 491, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975).
{¶ 63} When interpreting the Public Records Act, R.C. 149.43, we construe it liberally in favor of broad access, resolving " 'any doubt * * * in favor of disclosure.' " State ex rel. Cincinnati Enquirer v. Jones-Kelley , 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 5, quoting State ex rel. Cincinnati Enquirer v. Hamilton Cty. , 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996). Our decisions are therefore guided by the text of the statute and the duty to strictly construe exceptions to disclosure against the public-records custodian, who has the burden to prove that an exception applies. Id. at ¶ 10, citing State ex rel. Carr v. Akron , 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, ¶ 30, and State ex rel. Beacon Journal Publishing Co. v. Akron , 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 23. Because the majority departs from this duty, I dissent.
{¶ 64} The majority denies the request of relator Cincinnati Enquirer ('the Enquirer') for oral argument, but because the controversy before the court involves an issue of great public importance, I would grant the Enquirer's request. Without the benefit of oral argument, the majority relies on State ex rel. Dayton Newspapers, Inc. v. Rauch , 12 Ohio St.3d 100, 465 N.E.2d 458 (1984), which was categorically overruled in our landmark decision in State ex rel. Steckman v. Jackson , 70 Ohio St.3d 420, 434, 639 N.E.2d 83 (1994), overruled in part on other grounds , State ex rel. Caster v. Columbus , 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 47. The majority thereby fails to strictly construe the exception for "confidential law enforcement investigatory records" ("CLEIR") set forth in R.C. 313.10(A)(2)(e) pursuant to the bright-line rule announced in Steckman defining CLEIR for purposes of R.C. 149.43(A)(2)(c). See Steckman at 434, 639 N.E.2d 83.
*81 {¶ 65} Applying the definition of CLEIR established in Steckman to the current version of R.C. 313.10(A)(2)(e), I would hold that respondents, Pike County Coroner's Office and Pike County Coroner David Kessler (collectively, "PCCO"), have failed to prove that the CLEIR exception applies to the information redacted from the autopsy reports at issue here. Therefore, I would grant the requested writs of mandamus to compel the production of the unredacted records in this case and would award relators, Enquirer, GateHouse Media, d.b.a. the Columbus Dispatch, and reporter Holly Zachariah, court costs and reasonable attorney fees, pursuant to former R.C. 149.43(C)(1), 2015 Am.Sub.H.B. No. 64, which would be determined upon review of the filing of an itemized application by relators. I would not, however, grant statutory damages, because relators failed to transmit their respective public-records requests either by hand delivery or certified mail as required by former R.C. 149.43(C)(1), 2015 Am.Sub.H.B. No. 64.
I. REQUEST FOR ORAL ARGUMENT
{¶ 66} It is within our discretion to determine whether an original action merits *413 oral argument. S.Ct.Prac.R. 17.02(A). In exercising that discretion, we consider " 'whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among courts of appeals.' " (Emphasis added.) State ex rel. BF Goodrich Co., Specialty Chems. Div. v. Indus. Comm. , 148 Ohio St.3d 212, 2016-Ohio-7988, 69 N.E.3d 728, ¶ 23, quoting State ex rel. Davis v. Pub. Emps. Retirement Bd. , 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 15. In denying the Enquirer's request for oral argument, the majority concedes that this is a matter of great public importance but finds that the remaining factors are not present.
{¶ 67} However, in considering whether to allow oral argument under S.Ct.Prac.R. 17.02(A), we do not require that all four factors be present. In fact, we have previously granted oral argument in mandamus actions that involved matters of great public importance but none of the other factors. See State ex rel. School Choice Ohio, Inc. v. Cincinnati Pub. School Dist. , 147 Ohio St.3d 256, 2016-Ohio-5026, 63 N.E.3d 1183 ; State ex rel. Cincinnati Enquirer v. Dept. of Pub. Safety , 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258.
{¶ 68} The benefit of oral argument cannot be overstated. "Oral argument provides a window to the decision-making process that is unavailable when there is no public scrutiny." DiVito, Surviving the Death of Oral Argument , 99 Ill.B.J. 188 (2011).
{¶ 69} The court's decision today will affect every county, newspaper, and homicide investigation in Ohio. By denying oral argument, the majority has perpetrated a great disservice to the citizens of Ohio in that it has deprived them *82 of "the only opportunity * * * to see the [justices] at work and to witness at least some of the process that leads to appellate decisions," id. at 189. Accordingly, I would grant the Enquirer's request for oral argument.
II. ANALYSIS
A. Steckman categorically overruled Rauch
{¶ 70} The majority's declaration that "the relevance of Steckman to this case is limited, at best," majority opinion at ¶ 35, is misguided and based on the faulty premise that the definition of CLEIR as announced in Steckman applies only in pending criminal cases. While the majority attempts to limit Steckman , the reach of Steckman is much wider. When the General Assembly amended R.C. 313.10(A)(2)(e) to include an exception for CLEIR to the general rule that all autopsy reports are public records, it chose to define CLEIR with the phrase "as defined in section 149.43 of the Revised Code." R.C. 313.10(A)(2)(e). The General Assembly did not provide a definition of CLEIR in the statutory amendment. Therefore, the legislature was relying on our definition of CLEIR as developed in Steckman .
{¶ 71} Steckman established a "bright-line" rule that rendered "all cases (even though not specifically cited) that are contrary, in whole or in part," to Steckman "of no further force or effect," Steckman , 70 Ohio St.3d at 426, 639 N.E.2d 83 :
We recognize we have decided a plethora of cases that have not all, necessarily, been consistent. Differing fact patterns, the civil versus criminal context and the timing of R.C. 149.43 requests have brought about decision-making on a case-by-case basis. This * * * has in many ways hamstrung the proper administration of justice. We have avoided "bright line" rulings only because the lines were not very bright. Today's *414 three cases, when combined, now place in clear focus many of the problems arising from sometimes inconsistent rulings. Thus, we now believe it is time to draw some bright lines in cases which involve the use of R.C. 149.43 by any person seeking release of records in pending criminal proceedings.
We are cognizant of, and have reviewed, all of our cases on this subject as well as a number of court of appeals and trial court decisions. We make this point so that any interested reader can be assured that even absent citation to a particular case, we have in fact considered, in reaching our decision herein, each matter pertinent to this decision.
*83 (Emphasis added.) Id. at 429, 639 N.E.2d 83.
{¶ 72} In Steckman , we set forth the following nonexhaustive list of cases that we had considered, several involving the CLEIR exception:
State ex rel. Beacon Journal Publishing Co. v. Kent State Univ. (1993), 68 Ohio St.3d 40, 623 N.E.2d 51 (confidential law enforcement investigatory records); * * * State ex rel. Morales v. Cleveland (1993), 67 Ohio St.3d 573, 621 N.E.2d 403 (trial preparation documents-postconviction); State ex rel. Lawhorn v. White (1993), 67 Ohio St.3d 158, 616 N.E.2d 888 ; State ex rel. Hamblin v. Brooklyn (1993), 67 Ohio St.3d 152, 616 N.E.2d 883 (trial preparation records and work product-postconviction); Stateex rel. Vindicator Printing Co. v. Watkins (1993), 66 Ohio St.3d 129, 609 N.E.2d 551 (trial preparation and confidential law enforcement investigatory records); State ex rel. Johnson v. Cleveland (1992), 65 Ohio St.3d 331, 603 N.E.2d 1011 (trial preparation, investigatory work product, risk to witnesses and state/federal law exemptions); State ex rel. Williams v. Cleveland (1992), 64 Ohio St.3d 544, 597 N.E.2d 147 (trial preparation and confidential law enforcement investigatory exemptions-postconviction); * * * State ex rel. Coleman v. Cincinnati (1991), 57 Ohio St.3d 83, 566 N.E.2d 151 (trial preparation records-police department's homicide investigation files); State ex rel. Natl. Broadcasting Co. v. Cleveland (1991), 57 Ohio St.3d 77, 566 N.E.2d 146 (investigatory and trial preparation records); State ex rel. Zuern v. Leis (1990), 56 Ohio St.3d 20, 564 N.E.2d 81 (trial preparation records); * * * State ex rel. Multimedia, Inc. v. Whalen (1990), 48 Ohio St.3d 41, 549 N.E.2d 167 (confidential law enforcement investigatory records); State ex rel. Outlet Communications, Inc. v. Lancaster Police Dept. (1988), 38 Ohio St.3d 324, 528 N.E.2d 175 (arrest and intoxilyzer records-confidential law enforcement investigatory records; Furtherance of Justice Fund records); State ex rel. Natl. Broadcasting Co. v. Cleveland (1988), 38 Ohio St.3d 79, 526 N.E.2d 786 (" NBC I ") (investigatory work product exception); and State ex rel. Beacon Journal Publishing Co. v. Univ. of Akron (1980), 64 Ohio St.2d 392, 18 O.O.3d 534, 415 N.E.2d 310 ("routine incident reports").
Steckman at 429-430, 639 N.E.2d 83.
{¶ 73} Rauch , upon which the majority relies, was decided ten years prior to *415 Steckman . In Rauch , without defining "specific investigatory work product" as used in R.C. 149.43(A)(2)(c), we made the conclusory statement that an "autopsy is, in itself, an investigation" and held that an autopsy report therefore is exempt *84 from disclosure. 12 Ohio St.3d at 100-101, 465 N.E.2d 458. This is precisely the type of analysis rebuked by the Steckman court. See Steckman at 435, 639 N.E.2d 83 (noting that a prior decision's analysis of CLEIR exception for specific investigatory work product was "without citation to any authority except Beacon Journal ," which "did not deal with the specific work product exception" [emphasis sic] ).
{¶ 74} Moreover, the Rauch court interpreted an earlier version of R.C. 313.10, and a close reading reveals the limitation of this decision. The court specifically employed traditional concepts of statutory construction and concluded that an autopsy report was not contained within a "record[ ] of the coroner" within the meaning of R.C. 313.10 and therefore was not a public record, because an autopsy report is not encompassed in the General Assembly's description in R.C. 313.09 of coroner's records. See Rauch at 101, 465 N.E.2d 458.
{¶ 75} While "[s ]tare decisis is 'the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process,' " Hohn v. United States , 524 U.S. 236, 251, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998), quoting Payne v. Tennessee , 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), it "should not be, and has never been, used as the sole reason for the perpetuation of a stated rule of law which has proved to be unsound and unjust," Carter-Jones Lumber Co. v. Eblen , 167 Ohio St. 189, 197, 147 N.E.2d 486 (1958). The Steckman court realized that the inconsistency of its R.C. 143.49(A)(2) precedents had "hamstrung the proper administration of justice." Steckman , 70 Ohio St.3d at 429, 639 N.E.2d 83. Therefore, stare decisis was abandoned and all prior decisions that were contrary to the holding of Steckman , including Rauch , were overruled.
{¶ 76} Because of the sweeping language used in Steckman , the absence in Steckman of a specific citation to Rauch is of no consequence. Rauch was overruled by Steckman and is not the law. Therefore, the majority errs in relying on the court's conclusory statement in Rauch that an "autopsy" is an "investigation," 12 Ohio St.3d at 100, 465 N.E.2d 458.
B. The majority misinterprets the CLEIR exception by failing to apply Steckman
{¶ 77} Despite the fact that Rauch has been overruled, the majority relies on it, and in doing so, fails to use the two-step analysis established in Steckman that we and the courts of appeals have used to apply the CLEIR exception for over 20 years. See, e.g. , State ex rel. Leonard v. White , 75 Ohio St.3d 516, 664 N.E.2d 527 (1996) ; Gannett Satellite Information Network, Inc. v. Petro , 80 Ohio St.3d 261, 266-267, 685 N.E.2d 1223 (1997) ; State ex rel. Beacon Journal Publishing Co. v. Maurer , 91 Ohio St.3d 54, 56-57, 741 N.E.2d 511 (2001) ;
*85 State ex rel. Miller v. Ohio State Hwy. Patrol , 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 25-26 ; State ex rel. Cincinnati Enquirer v. Sage , 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 18 ; State ex rel. Miller v. Ohio State Hwy. Patrol , 2014-Ohio-2244, 14 N.E.3d 396, ¶ 14 (12th Dist.).
{¶ 78} To apply the bright-line rule for considering a claim for a record's exemption from disclosure as "specific investigatory work product" under R.C. 149.43(A)(2)(c), we conduct a two-step *416 analysis, in which we first ask: Does the record pertain to a law-enforcement matter? Steckman , 70 Ohio St.3d at 433-434, 639 N.E.2d 83. If the record does pertain to a law-enforcement matter, then the record must also meet the definition of "specific investigatory work product" in order to be exempt from disclosure. Id.
{¶ 79} The General Assembly did not define the phrase "specific investigatory work product" for purposes of R.C. 149.43(A)(2)(c). Therefore, relying on the meaning of "attorney work product" for purposes of the attorney-client privilege, this court concluded in Steckman that "specific investigatory work product" means the " 'notes, working papers, memoranda, or similar materials, prepared by attorneys [here, by law enforcement officials] in anticipation of litigation.' " (Brackets sic.) Id. at 434, 639 N.E.2d 83, quoting Black's Law Dictionary 1606 (6th Ed.1990) (definition of "work product rule").
{¶ 80} Years after Steckman , in 2006, the General Assembly amended R.C. 313.10 and specifically defined autopsy reports as being public records. Am.Sub.H.B. No. 235, 151 Ohio Laws, Part IV, 7190, 7192. R.C. 313.10 was amended again in 2009 to its current form, which provides that "[r]ecords of a deceased individual that are confidential law enforcement investigatory records as defined in [R.C.] 149.43" are not public records and therefore are protected from disclosure. 2008 Sub.H.B. No. 471 (effective Apr. 7, 2009) ("H.B. 471").
{¶ 81} Because the General Assembly did not expressly provide a definition for CLEIR when it inserted that phrase in R.C. 313.10(A)(2)(e), we presume that the General Assembly adopted this court's definition of CLEIR from Steckman . See State v. Ferguson , 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 25, citing Spitzer v. Stillings , 109 Ohio St. 297, 142 N.E. 365 (1924), syllabus.
{¶ 82} To determine, as the majority does, that the General Assembly's 2009 amendment adding the CLEIR exception to R.C. 313.10(A)(2)"endorsed what we had held in * * * Rauch ," majority opinion at ¶ 32, violates established principles of statutory construction. The General Assembly " 'is presumed to know the decisions of this court, and, where it uses words or phrases that have been defined or construed by this court, it is presumed to have used them in the sense that they have been so defined or construed.' " Karabin v. State Auto. Mut. Ins. Co. , 10 Ohio St.3d 163, 166, 462 N.E.2d 403 (1984), quoting Tax Comm. v. Sec. Savs. Bank & Trust Co. , 117 Ohio St. 443, 450, 159 N.E. 570 (1927). When the *86 General Assembly inserted the CLEIR exception in R.C. 313.10(A)(2), it did so without providing a definition. Therefore, the General Assembly was aware that this court in Steckman had overruled Rauch . Rauch was of no force or effect, and the definition announced in Steckman controls.
{¶ 83} Moreover, when the General Assembly enacts a statute, it "does not intend sub silentio to enact statutory language that it has earlier discarded in favor of other language." Immigration & Naturalization Serv. v. Cardoza-Fonseca , 480 U.S. 421, 442-443, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). As introduced in the Ohio House of Representatives in 2008, H.B. 471 originally contained two new exceptions to the general rule that autopsy reports are public records. The exception proposed as R.C. 313.10(A)(2)(e) provided that "[r]ecords of a deceased individual whose death is believed to be related to the actions of another person and believed to result potentially in the filing of criminal charges or the investigation of which remains ongoing or open" are not public *417 records. Am.H.B. No. 471, as introduced in the 127th General Assembly, available at http://archives.legislature.state.oh.us/bills.cfm?ID=127_HB_471_I (accessed Nov. 14, 2017).
{¶ 84} When H.B 471 was voted out of committee and sent to the full House, the bill had been amended and the above-quoted language had been deleted. In its place, the committee had inserted the CLEIR exception as it exists today in R.C. 313.10(A)(2)(e). See Am.Sub.H.B. 471, as reported by H. State Government and Elections (2008), available at http://archives.legislature.state.oh.us/bills.cfm?ID=127_HB_471_RH (accessed Nov. 14, 2017).
{¶ 85} Even the attorney general has asserted that Rauch has been superseded by the General Assembly's amendments to R.C. 313.10 in 2006 and 2009. Ohio Sunshine Laws: An Open Government Resource Manual 62 (2013), fn. 595 ( Rauch 's holding that *87 "an autopsy report may be exempt as a specific investigatory technique or work product" was "superceded [sic] by R.C. 313.10 (final autopsy reports are specifically declared public records)" [italics sic] ). It was not until after this controversy arose that the attorney general recharacterized the effect of the amendments to R.C. 313.10 on Rauch . Compare Ohio Sunshine Laws: An Open Government Resource Manual 71 (2017), fn. 706 ( Rauch 's holding that "an autopsy report may be exempt as a specific investigatory technique or work product" was "modified by R.C. 313.10" [italics sic] ),[3] with Ohio Sunshine Laws: An Open Government Resource Manual 64 (2014), fn. 609 ( Rauch 's holding that "an autopsy report may be exempt as a specific investigatory technique or work product" was superseded by R.C. 313.10 ); Ohio Sunshine Laws: An Open Government Resource Manual 67 (2015), fn. 644 (same); Ohio Sunshine Laws: An Open Government Resource Manual 67 (2016), fn. 653 (same).
{¶ 86} As further support for its conclusion that the unredacted autopsy reports requested in this case should not be released, the majority asserts that information detailing "gunshot wounds including the path and trajectory of bullets, specific identifying information such as scars or tattoos, descriptions of body placement, and toxicology results" should be shielded from public disclosure "due to its investigative value to law enforcement." (Emphasis added.) Majority opinion at ¶ 43. That consideration, however-the subjective preferences of law enforcement, including its determination that certain information has "investigative value"-was not added to the statutory text when the General Assembly amended R.C. 313.10. Therefore, the "investigative value" of information to law enforcement has no bearing on the meaning of the text of the statute. See State v. Morgan , ---Ohio St.3d ----, 2017-Ohio-7565, --- N.E.3d ----, ¶ 20.
{¶ 87} Moreover, whether information has "investigative value" is not considered under the two-step analysis established in Steckman and applied by its progeny. See Leonard , 75 Ohio St.3d 516, 664 N.E.2d 527 ; Gannett Satellite Information Network, Inc. , 80 Ohio St.3d at 266-267, 685 N.E.2d 1223 ; Maurer , 91 Ohio St.3d at 56-57, 741 N.E.2d 511 ; Miller , 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, at ¶ 25-26.
*418 {¶ 88} We have consistently rejected taking into account the subjective consideration of whether a document or recording contains some "investigative value" when analyzing the applicability of a public-records exception under R.C. 149.43(A). When analyzing the public-records exception in R.C. 149.43(A)(1) for "[t]rial preparation records," this court determined that a record is not exempt from disclosure just because a prosecutor had included the record in the prosecutor's file. State ex rel. Carpenter v. Tubbs Jones , 72 Ohio St.3d 579, 580, 651 N.E.2d 993 (1995). In State ex rel. Cincinnati Enquirer v. Hamilton Cty. , we rejected looking at the "particular content of the [requested] 911 tapes" as well as law enforcement's concerns about the consequences of releasing the 9-1-1 tapes. 75 Ohio St.3d at 378, 662 N.E.2d 334. In Maurer , we determined that because routine offense and incident reports are "subject to immediate release upon request" pursuant to Steckman , law enforcement's desire to keep the identity of an uncharged police officer confidential did not permit law enforcement to redact identifying information from an incident report. Maurer at 57, 741 N.E.2d 511. In Dept. of Pub. Safety , we stated that the CLEIR exception for specific investigatory work product does not shield "from disclosure all dash-cam recordings in their entirety merely because they contain potential evidence of criminal activity that may aid *88 in a subsequent prosecution." 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, at ¶ 45. And in Sage , we did not consider the evidentiary value of a 9-1-1 recording, or law enforcement's desire to keep it confidential, even though the recording included a suspect's stating, "I'm a murderer, and you need to arrest me." 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, at ¶ 3, 17-18.
{¶ 89} The effect of today's majority opinion cannot be understated. Advancing the subjective consideration of whether a record or some information contained in a record has "investigative value" when analyzing the CLEIR exception under the Public Records Act amounts to building a foundation on quicksand-where the exception swallows the rule.
{¶ 90} "Value" is defined as "relative worth, utility, or importance." Webster's Third New International Dictionary 2530 (2002). The relative worth, utility, or importance of certain information is, by its very nature, in the eye of the beholder. This case bears out the very subjective nature of the inquiry and the slippery slope the majority has created.
{¶ 91} A thorough review of the redacted and unredacted autopsy reports reveals inconsistencies in the redactions. For example, in some of the autopsy reports, detailed descriptions of the victim's scars and tattoos is not redacted, while in other reports, all or most of that information is redacted. The majority's broadening of the CLEIR exception to include subjective considerations like "investigative value" or use of the information in testing the credibility of tipsters will lead to an inconsistent application of the definition of CLEIR announced in Steckman and will add to the uncertainty that we sought to avoid in that case. See Steckman , 70 Ohio St.3d at 429, 639 N.E.2d 83.
{¶ 92} As explained above, when the General Assembly enacted R.C. 313.10(A)(2)(e), it did not define CLEIR or modify R.C. 149.43(A)(2)(c) to include the subjective "investigative value" consideration that the majority relies upon. As members of the judicial branch, whose authority is limited to giving effect to the law as written-not rewriting it or legislating from the bench-writing "investigative value" into the statute is beyond our authority.
*419 {¶ 93} This court in Westfield Ins. Co. v. Galatis , 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256 (2003), established a tripartite test to overrule precedent; once overruled, a precedent cannot be called forth from the grave like Lazarus. "In a word the genius of a great judge in the reading of statutes lies not in a bias for this or that tactical value, however worthy, but in his respect for the limits of his own function-for that grand strategic division of labor between legislature and court, between Nation and State." Mendelson, Mr. Justice Frankfurter on the Construction of Statutes , 43 Cal.L.Rev. 652, 673 (1955).
*89 C. The autopsy reports are not CLEIR pursuant to Steckman
{¶ 94} "In matters of statutory construction * * * it makes a great deal of difference whether you start with an answer or with a problem." Frankfurter, Some Reflections on the Reading of Statutes , 47 Colum.L.Rev. 527, 529 (1947). In this case, if one begins with the problem-the meaning of CLEIR for purposes of the exception for specific investigatory work product-the answer is easy.
{¶ 95} Applying our two-step analysis and the definitive definition of CLEIR as announced in Steckman , I would hold that PCCO has failed to prove that the information redacted from the autopsy reports at issue here falls within the definition of CLEIR because the information neither "pertains to a law enforcement matter" nor reveals "specific investigatory work product," R.C. 149.43(A)(2)(c).
1. CLEIR must "pertain[ ] to a law enforcement matter"
{¶ 96} For a record to be considered a "confidential law enforcement investigatory record," the record must "pertain[ ] to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature." R.C. 149.43(A)(2). This requires the holder of the record to have the authority to investigate a violation of the law. See State ex rel. Polovischak v. Mayfield , 50 Ohio St.3d 51, 52-53, 552 N.E.2d 635 (1990) (noting authority of Internal Security Committee of Bureau of Workers' Compensation ("BWC") to investigate BWC employees who may have committed "criminal violations, abuse of office, or misconduct" [emphasis omitted] in determining whether committee's records of investigation of employee were exempt from disclosure); State ex rel. Mahajan v. State Med. Bd. , 127 Ohio St.3d 497, 2010-Ohio-5995, 940 N.E.2d 1280, ¶ 29 (in light of investigatory power of medical board, records compiled during investigation of physician pertained to a law-enforcement matter of an administrative nature). If the record holder lacks the authority to investigate, then the requested record does not pertain to a law-enforcement matter. See State ex rel. Strothers v. Wertheim , 80 Ohio St.3d 155, 158, 684 N.E.2d 1239 (1997) (plurality opinion) (CLEIR exception did not protect records of private ombudsman's office from disclosure because office "has no legally mandated enforcement or investigatory authority"); Sage , 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, at ¶ 16-18 (outgoing telephone call placed by a 9-1-1 operator to a murder suspect was a public record, not protected from disclosure under the exception for "[t]rial preparation records," in part because the 9-1-1 operator was not involved in criminal investigations).
{¶ 97} I agree with the majority that the coroner plays an important role in gathering facts after a death that might later be charged as a murder, but this role is limited "to decid[ing] on a diagnosis giving a reasonable and true cause of death," R.C. 313.15. See State v. Maxwell , 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 57, quoting Zabrycki, Comment, *420 *90 Toward a Definition of "Testimonial": How Autopsy Reports Do Not Embody the Qualities of a Testimonial Statement , 96 Cal.L.Rev. 1093, 1130 (2008) (autopsy report is "created 'for the primary purpose of documenting cause of death for public records and public health' "). The significance of the coroner's role, however, does not alter the fact that the coroner lacks the statutory authority to investigate a violation of the law-and thus, the autopsy does not "pertain[ ] to a law enforcement matter," R.C. 149.43(A)(2).
{¶ 98} The majority contends that a "coroner's work in a homicide-related autopsy is investigative" and points to R.C. 313.08(I), 313.09, 313.12(A), and 313.17 as support. Majority opinion at ¶ 38. These statutes do not support the majority's position.
{¶ 99} R.C. 313.08(I) is a permissive statute that permits a coroner to submit evidence "gathered in the investigation of a death to the bureau of criminal identification and investigation for assistance in determining whether the death resulted from criminal activity." This provision demonstrates that the coroner must rely on a state agency for an investigation as to whether criminal activity caused the death.
{¶ 100} R.C. 313.09 requires the coroner to send records to the county prosecutor when the coroner believes that "further investigation is advisable." This provision demonstrates that the coroner must rely on the prosecuting attorney and local law enforcement to pursue an investigation of a violation of the law. See Strothers , 80 Ohio St.3d at 158, 684 N.E.2d 1239 (private ombudsman's office had "no legally mandated enforcement or investigatory authority" and instead ensured that allegations of child abuse and neglect were reported to the proper investigatory authority). And R.C. 313.12(A)'s requirement that in certain cases, the coroner be notified of the known facts concerning the time, place, manner, and circumstances of a death is congruent with the coroner's primary duty to determine the cause and manner of death. See R.C. 313.15.
{¶ 101} Without a doubt, the General Assembly instills broad authority and latitude in coroners to determine the cause and manner of death, but R.C. 313.17 is merely supportive of that duty and does not make a coroner a law-enforcement officer. Further, it does not enlarge a coroner's limited purpose of determining the cause and manner of death.
{¶ 102} Contrary to the majority's assertion, R.C. Chapter 313 lacks any language that instills the coroner with the authority to investigate a violation of the law. Compare Polovischak , 50 Ohio St.3d at 52-53, 552 N.E.2d 635, quoting former R.C. 4121.122(D), Am.Sub.H.B. No. 222, 143 Ohio Laws, Part II, 3197, 3280 (BWC Internal Security Committee had authority to " 'investigate all claims or cases of criminal violations, abuse of office or misconduct on the part of' " BWC employees);
*91 Mahajan , 127 Ohio St.3d 497, 2010-Ohio-5995, 940 N.E.2d 1280, at ¶ 33, quoting R.C. 4731.22(F)(1) (medical board " 'shall investigate evidence that appears to show that a person has violated any provision of this chapter or any rule adopted under it' ").
{¶ 103} The coroner gathers facts that are used by law enforcement and prosecutors for criminal prosecutions. Law enforcement, not the coroner, investigates any violation of the law that occurred. The coroner's role is not to investigate a violation of the law but to investigate the cause and manner of death. The majority fails to recognize that the coroner is one degree removed from those law-enforcement officials who are empowered to investigate a murder. Therefore, an autopsy in a homicide case does not "pertain[ ] to a law *421 enforcement matter" within the meaning of R.C. 149.43(A)(2), and it is not exempt from disclosure under the CLEIR exception.
2. R.C. 149.43(A)(2)(c) : Specific investigatory work product
{¶ 104} As discussed above, the majority attempts to limit this court's landmark decision in Steckman , in which we initially defined "specific investigatory work product" in R.C. 149.43(A)(2)(c). 70 Ohio St.3d at 434, 639 N.E.2d 83. Nevertheless, our case law requires that autopsy reports must disclose "specific investigatory work product" to be considered CLEIR. To qualify for this "very narrow exception[ ]," State ex rel. Police Officers for Equal Rights v. Lashutka , 72 Ohio St.3d 185, 188, 648 N.E.2d 808 (1995), a record must constitute (1) " 'notes, working papers, memoranda, or similar materials,' " (2) prepared by law-enforcement officials, (3) in anticipation of criminal litigation. Steckman at 434, 639 N.E.2d 83, quoting Black's Law Dictionary at 1606. All three prongs must be established; the failure to meet one prong means that the requested record must be disclosed. The unredacted autopsy reports requested in this case fail to meet any of the three prongs.
{¶ 105} First, the autopsy reports are not "notes, working papers, memoranda, or similar materials." The majority describes the information redacted from the autopsy reports as
general information about injuries, and observations about the victims' bodies including detailed descriptions of various organs. Among the redacted information are specific facts about gunshot wounds including the path and trajectory of bullets, specific identifying information such as scars or tattoos, descriptions of body placement, and toxicology results.
Majority opinion at ¶ 40.
{¶ 106} The autopsy reports at issue document factual information regarding the appearance of the deceased individuals' bodies. This kind of factual information-describing *92 who, what, where, and how-constitutes a public record when contained within a law-enforcement incident report. See Steckman at paragraph five of the syllabus ("work product exception does not include ongoing routine offense and incident reports"). The autopsy reports are devoid of the coroner's theories as to who perpetrated the killings.
{¶ 107} The second prong of the definition of "specific investigatory work product" requires that the record was prepared by law-enforcement officials. Steckman , 70 Ohio St.3d at 434, 639 N.E.2d 83. We have rejected an interpretation of the CLEIR exception for specific investigatory work product that would shield dash-cam recordings from disclosure "merely because they contain potential evidence of criminal activity that may aid in a subsequent prosecution." Dept. of Pub. Safety , 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, at ¶ 45. Nevertheless, the majority relies on the affidavits of Dr. Kessler and Special Agent Michael Trout of the Ohio Bureau of Criminal Investigation to support withholding the unredacted autopsy reports because the information contained in them would be useful to law enforcement in investigating the crimes.
{¶ 108} The attorney general has concluded that a county coroner does not qualify as a "law enforcement officer" for purposes of either the Revised Code or the Rules of Criminal Procedure. 1998 Ohio Atty.Gen.Ops. No. 98-033, at 5. Instead, as noted above, the coroner's primary duty and purpose is to determine the cause and *422 manner of death. See Maxwell , 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, at ¶ 57. Similar to the 9-1-1 operator in Sage , 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, at ¶ 18, the coroner gathers facts and prepares autopsy reports as part of his routine duties. Coroners "perform autopsies in a number of situations, only one of which is when a death is potentially a homicide." Maxwell at ¶ 59. The potential that autopsy reports may be used by law enforcement in a criminal prosecution does not elevate a coroner to a law-enforcement official. Therefore, the unredacted autopsy reports fail to meet the second prong of the definition of "specific investigatory work product."
{¶ 109} The potential that autopsy reports may be used in a criminal prosecution also does not transform the purpose of a report routinely prepared to determine and memorialize the cause and manner of death into a document prepared in anticipation of litigation. Under the third prong of its definition, "specific investigatory work product" is strictly construed to include only those records that are "compiled in anticipation of litigation," Steckman at paragraph five of the syllabus, as opposed to routinely generated records that may someday be of use in a criminal prosecution.
{¶ 110} Lastly, our Confrontation Clause jurisprudence is helpful because in it, we have analyzed whether evidence was prepared in anticipation of litigation and therefore is testimonial such that its admission in the absence of a witness's *93 testimony would violate a defendant's right under the Sixth Amendment to the United States Constitution to confront the witnesses against him. See State v. Craig , 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 82. The majority dismisses reliance on this jurisprudence because whether a document is admissible at trial and whether a document is a public record are "distinct questions." Majority opinion at ¶ 45. While I agree that these questions are different, our answers to the question whether material was prepared in anticipation of litigation should not depend on the nature of the larger legal issue giving rise to the question. In Craig , we concluded that autopsy reports " 'are not testimonial in nature because they are prepared in the ordinary course of regularly conducted business and are "by their nature" not prepared for litigation.' " Craig at ¶ 82, quoting People v. Durio , 7 Misc.3d 729, 734, 794 N.Y.S.2d 863 (N.Y.Sup.2005), quoting Crawford v. Washington , 541 U.S. 36, 56, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We reaffirmed this reasoning in Maxwell , in which, applying the primary-purpose test, we reasoned that autopsy reports are "created 'for the primary purpose of documenting cause of death for public records and public health.' " Maxwell at ¶ 57, quoting Zabrycki, 96 Cal.L.Rev. at 1130.
{¶ 111} The majority, after examining the same cases, concludes that these holdings are not applicable, stating, "It cannot be disputed that a law-enforcement investigatory purpose is a different, broader category than a trial-preparation purpose such as gaining evidence against a defendant or accusing a targeted individual." Majority opinion at ¶ 49. Instead of relying on Steckman , which restricts the CLEIR exception for specific investigatory work product to records "compiled in anticipation of litigation," 70 Ohio St.3d 420, 639 N.E.2d 83, at paragraph five of the syllabus, the majority relies on a plurality opinion of the United States Supreme Court that rejected a Confrontation Clause challenge to the admission of a record because it was "not prepared for the primary purpose of accusing a targeted individual," Williams v. Illinois , 567 U.S. 50, 84, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012). However, *423 this phrase does not appear in Steckman , in which we defined "specific investigatory work product" as information "compiled in anticipation of litigation." Steckman at paragraph five of the syllabus.
{¶ 112} The majority substantially broadens the scope of records that can be considered specific investigatory work product because information used in "accusing a targeted individual" is a much broader category than records "compiled in anticipation of litigation." This broader category based on Williams would embrace any material that law enforcement might use in building a case against a criminal defendant. The majority does not attempt to explain how its reasoning comports with our prior decisions interpreting the meaning of the CLEIR exception for specific investigatory work product. The majority's reliance on Williams is contrary to our precedent interpreting the meaning of "specific investigatory work product" in the CLEIR exception. See Steckman at paragraph *94 five of the syllabus (holding that routine police incident reports do not constitute specific investigatory work product); Dept. of Pub. Safety , 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, at ¶ 45 ("declin[ing] to adopt an interpretation of the investigative-work-product exception that would shield from disclosure all dash-cam recordings in their entirety merely because they contain potential evidence of criminal activity that may aid in a subsequent prosecution").
{¶ 113} We should not abandon the bright-line rule established in Steckman that defines "specific investigatory work product" as records "compiled in anticipation of litigation." It would be illogical in a public-records case to declare that an autopsy report is prepared in anticipation of litigation and shielded from disclosure when we have already held-over a constitutional challenge of a defendant facing a possible death sentence if convicted-that an autopsy report is prepared in the ordinary course of business and therefore admissible in court pursuant to the business-record hearsay exception. See Maxwell , 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, at ¶ 63 ; Craig , 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, at ¶ 88. Because the autopsy reports at issue here were not created in anticipation of litigation, the redacted portions cannot be withheld under the CLEIR exception for "specific investigatory work product," R.C. 149.43(A)(2)(c).
{¶ 114} The majority decries both dissenting opinions for disrespecting the "meaning and purpose of the CLEIR exception as expressed by the legislature" and for doing this great "disservice to the General Assembly" under the "pretense of strict construction," majority opinion at ¶ 54, but "[l]egislation has an aim * * *. That aim, that policy is not drawn, like nitrogen, out of air; it is evinced in the language of the statute, as read in the light of other external manifestations of purpose." Frankfurter, 47 Colum.L.Rev. at 538-539.
{¶ 115} In R.C. 313.10 the General Assembly sought to make all autopsy reports public records subject to very narrow exceptions. The exception the legislature chose to enact that applies here is "[r]ecords of a deceased individual that are confidential law enforcement investigatory records as defined in section 149.43 of the Revised Code," R.C. 313.10(A)(2)(e).
{¶ 116} Because the General Assembly did not define CLEIR in R.C. 313.10, it relied on our definition of CLEIR as announced in Steckman . Had the legislature intended another definition, it would have said so.
{¶ 117} The only disservice done to the language of the statute and to the legislature *424 is done at the hands of the majority by inserting its own policy-making decisions into the language of the statute. A body of four thereby elevates its policy preferences over the balanced and reasoned decision-making of the whole of the General Assembly.
*95 [T]he courts are not at large. * * * They are under the constraints imposed by the judicial function in our democratic society. As a matter of verbal recognition certainly, no one will gainsay that the function in construing a statute is to ascertain the meaning of words used by the legislature. To go beyond it is to usurp a power which our democracy has lodged in its elected legislature. * * * A judge must not rewrite a statute, neither to enlarge nor to contract it. Whatever temptations the statesmanship of policy-making might wisely suggest, construction must eschew interpolation and evisceration. He must not read in by way of creation. He must not read out except to avoid patent nonsense or internal contradiction.
Frankfurter, 47 Colum.L.Rev. at 533. "[T]he only sure safeguard against crossing the line between adjudication and legislation is an alert recognition of the necessity not to cross it and instinctive, as well as trained, reluctance to do so." Id. at 535.
D. Statutory damages, attorney fees, and costs
{¶ 118} Relators e-mailed their respective public-records request to PCCO. To be entitled to statutory damages, however, the request had to be transmitted by either hand delivery or certified mail. Former R.C. 149.43(C)(1), 2015 Am.Sub.H.B No. 64. Therefore, relators are not entitled to an award of statutory damages.
{¶ 119} Neither of the subsections in former R.C. 149.43(C)(2)(b), 2015 Am.Sub.H.B. No. 64, providing for mandatory attorney fees apply. However, I would order discretionary reasonable attorney fees in this case based on former R.C. 149.43(C)(2)(b), 2015 Am.Sub.H.B. No. 64. A well-informed public office would have released the full autopsy reports because of the attorney general's guidance in the sunshine-laws manual that Rauch had been superseded by the General Assembly's amendments to R.C. 313.10. Moreover, the attorney general had issued an opinion opining that a coroner is not a law-enforcement official, and under our definition of specific investigatory work product in Steckman , autopsy reports are not subject to the CLEIR exception in R.C. 313.10(A)(2)(e). Additionally, the public policy expressed in R.C. 313.10 is that autopsy reports are public records.
III. CONCLUSION
{¶ 120} For the foregoing reasons, I would grant oral argument and would grant the requested writs of mandamus to compel the production of the unredacted *96 autopsy reports because PCCO has failed to prove that the CLEIR exception applies to the information redacted from the reports. Additionally, I would award relators court costs and reasonable attorney fees, pursuant to former R.C. 149.43(C)(1), 2015 Am.Sub.H.B. No. 64, which would be determined on review of the filing of an itemized application by relators. I would not, however, grant statutory damages, because relators failed to transmit their respective public-records requests either by hand delivery or certified mail as required by former R.C. 149.43(C)(1), 2015 Am.Sub.H.B. No. 64.
O'Donnell, J., concurs in the foregoing opinion.

The document properties for the online PDF version of the 2017 edition of the attorney general's sunshine-laws manual indicate that it was uploaded to the attorney general's website on March 3, 2017-seven months after relators filed these mandamus actions. See http://www.ohioattorneygeneral.gov/Files/Publications-Files/Publications-for-Legal/SunshineLaw-Publications/Sunshine-Laws-Manual.aspx (accessed November 14, 2017).